THOMAS HENDERSON v. JAMES G. SHERMAN, CAROLINE A. CASWELL AND ANDREW J. COCHRAN.

*Misjoinder—Statute of descents—Proceeding to reach funds of estates— Abandonment of trusts—Interest on accounting—Compensation of trustee.*

An objection for misjoinder should be taken in the trial court and not raised for the first time on appeal.

In bringing suit in equity to reach the funds of an estate, it is not a fatal misjoinder that complainant sues as assignee of one party in interest and as guardian of another.

Complainant in a bill cannot properly appear also as a defendant in the same suit.

Comp. L. § 4313, provides that where an intestate has acquired property by descent, only such heirs shall succeed to it as are of the blood of the ancestor from whom he acquired it.    *Held*, that this applies to real and not to personal property, and deals with the course of descents and not the mode of distribution.    It has no reference to property conveyed to a trustee to be sold for his benefit.

Defendants in a bill for an accounting brought by the assignee of an interest under a deed of trust, are not concerned as to whether or not the complainant paid anything for the assigned interest.

A beneficiary under a deed of trust can pass his interest by gift if he desires.

The trustee in a deed of trust cannot divest himself of the trust by simply withdrawing from it with the assent of the grantor, even though the latter is a beneficiary, if there are other beneficiaries who do not consent, or, being infants, cannot.

An abandonment of a trust by the trustee and a surrender of the fund to the grantor constitute a breach of the trust and involve both in liability.

Seven per cent. is the highest per cent. that can be awarded on an accounting unless there is an express contract for a higher rate, or some special reason in the case for exacting more.

A trustee is not entitled as of right to compensation, but on accounting it is within the discretion of a court of equity to make or withhold allowance as the case requires. It may properly be withheld if his services are merely constructive and if his non-feasance has involved the estate in litigation.

Appeal from Wayne. Submitted Oct. 20. Decided Jan. 5.

BILL for accounting for moneys received under a trust. Defendants appeal. Decree modified.

*Browse T. Prentis* and *Alfred Russell* for complainant. A trustee is liable for neglecting to carry out his trust: *Preston v. Wilcox* 38 Mich. 578; *Fry v. Fry* 27 Beav. 144; Underhill on Trusts 104, 110, 112, 119, 148; even an honest and diligent trustee is held responsible: *Hemphill v. Lewis* 7 Bush 214; a trustee cannot resign his trust: 2 Perry on Trusts §§ 474, 920, 921; Tiff. & Bul. on Trusts 861; a trustee's duties are gratuitous, and he is bound only to good faith and reasonable diligence and liable only for gross negligence: 2 Story Eq. Jur. § 1269; if there is no *mala fides*, the court should always favor the trustee: *Knight v. Lord Plymouth* 3 Atk. 480; *Carter v. Rolland* 11 Humph. (Tenn.) 333; 2 Spence Eq. Juris. 48; *Pybus v. Smith* 1 Vesey Jr. 193; a trustee is not answerable for an error of judgment, or for more than was actually received for the trust estate: *Osgood v. Franklin* 2 Johns. Ch. 27; 2 Spence Eq. Juris. 936; *Bradshaw v. Cruise* 4 Heisk. (Tenn.) 264; *Jackson v. Jackson* 1 Atk. 513; *Johnson's Appeal* 12 S. & R. 317; *Waring v. Darnall* 10 Gill & J. 126; and will not be held accountable for more money than he has actually received, except "in cases of very supine negligence or willful default": *Taylor v. Benham* 5 How. 275; *Garrett v. Noble* 6 Sim. 516; *Thompson v. Brown* 4 Johns. Ch. 619; *Ellig v. Naglee* 9 Cal. 684; *Neff's Appeal* 57 Penn. St. 91; a trust is simply honorary: Willard's Eq. Jur. 184; and a trustee who has abused his trust is not entitled to

commissions: *Lathrop v. Smalley* 12 Am. L. Reg. (N. S.) 198; *Moore v. Zabriskie* 7 id. 767.

*Henry M. Cheever* for defendants. Comp. L. § 4313 providing that inheritances acquired by descent shall go to those only who are of the blood of the ancestor, embraces real property if construed with succeeding provisions: see *Rowley v. Stray* 32 Mich. 70; *Burke v. Burke* 34 Mich. 451; courts will remove a trustee if the author of the trust after choosing him, desires his removal and the beneficiaries acquiesce: *Preston v. Wilcox* 38 Mich. 582; 2 Perry on Trusts §§ 920, 921; *Bowditch v. Andrew* 8 Allen 339; *Smith v. Harrington* 4 Allen 566; *Norris v. Thomson* 4 Greene Ch. 314; *Inches v. Hill* 106 Mass. 577; *Taylor v. Huber* 13 Ohio St. 288; *Short v. Wilson* 13 Johns. 33; a trustee may resign his trust by consent of the beneficiaries: 1 Perry on Trusts §§ 268, 274; *Huckabee v. Billingsly* 16 Ala. 417; *Craig v. Craig* 3 Barb. Ch. 76; *Drane v. Gunter* 19 Ala. 731; *Thatcher v. Candee* 3 Keyes 157; *Shepherd v. McEvers* 4 Johns. Ch. 136; *Cruger v. Halliday* 11 Paige 319; *Ridgeley v. Johnson* 11 Barb. 527; *Webster v. Vandeventer* 6 Gray 428; *Pearce v. Pearce* 22 Beav. 248; *Jones v. Stockett* 2 Bland 409; *Perkins v. McGavock* 3 Hayw. (Tenn.) 256.

GRAVES, C. J. The defendants Caroline A. Caswell and Andrew J. Cochran intermarried in 1862 and had one child, George E. Cochran, who was born about 1864. In 1867 the complainant bargained a certain dwelling place on Congress street in Detroit to Cochran for the consideration of $4000, the terms being $500 cash, and the remainder secured by mortgage on the property on three years' time with interest at eight per cent., and another mortgage of $2500 drawing eight per cent. held as collateral. The entire consideration proceeded from Cochran, but the title was made to his wife.

December 1, 1868, she filed her bill of complaint for a divorce on the ground of his habitual drunkenness, and during the pendency of the case and with their mutual

approbation she put the title by a conveyance in trust, in the hands of the defendant Sherman. This was on the 12th of March, 1869. About $1000 of complainant's mortgage still remained and was past due. The leading motive seems to have been, in view of the unhappy state of the family, to provide for paying him and thereby prevent the consumption of the entire property on his mortgage, and also to guard the interest of the young child and provide the necessary means for his care, nurture and support. The trusts raised by this deed appear in the bill and in the facts reported by the special commissioner.

The defendant Sherman accepted the trust and immediately put the property in the hands of Mr. Hebbard to be rented and taken care of. April 24, 1869, a decree was given in the divorce case by which the wife was divorced from the bonds of matrimony on the ground of the habitual drunkenness of the husband, and the custody of the child was assigned to the wife's mother.

The defendant Sherman made no effort to sell the property and in December, 1870, for the purpose of retiring from the trust and relieving himself from its duties quitclaimed the premises to his grantor, Mrs. Caswell, she having married in the mean time a person of that name. The defendant Sherman in taking this course supposed it was a step which he might regularly take and that it amounted only to a return of the property to his grantor, and involved no infraction of legal duty on his part. In the preceding June the complainant, acting under the power of sale in his purchase-money mortgage, had bid in the premises on his own foreclosure and the time of redemption which was now running would expire June 9, 1871, or in about six months. The terms of the trust deed conveyed no authority to mortgage the estate to obtain means to discharge complainant's encumbrance, and complainant was unwilling to give time, or allow any one, who might be disposed to give indulgence, to become assignee on paying him his entire claim. The defendants Sherman and Mrs. Caswell were subsequently

advised that said quitclaim by the former to the latter was unauthorized, and she thereupon quitclaimed back to him.

The time of redemption on complainant's bid was approaching its close and Mrs. Caswell applied to Edward C. Walker, Esq., for a loan to enable her to redeem, but the application was ineffectual as Mr. Walker (who is one of defendants' council in this case) was of opinion that a loan could not be secured on the premises as the title stood. It was then proposed that Mr. Walker should become purchaser and that Mr. Sherman should deed to him, in order that he might mortgage the property for money to redeem against complainant, and it was finally agreed between Mrs. Caswell and Mr. Walker that she should be purchaser in fact, but that the title should run to him and that he should mortgage the place for $1000 to effect said redemption and prevent complainant from getting the entire estate and the parties in interest under the trust deed from losing it. This arrangement was carried out. Sherman conveyed to Walker for an agreed consideration of $3000 and Walker mortgaged the place to Minerva Raymond for $1000. These transactions occurred about the 9th of May, 1871, and on the 2d of June, 1871, Mr. Walker applied the $1000 obtained from Minerva Raymond and $55.79 furnished by Mrs. Caswell, to the redemption of complainant's foreclosure—the whole sum paid therefor being $1055.79.

The legal title thence remained in Mr. Walker until about the 15th of May, 1874, at which time the premises were sold and conveyed in good faith to Mary Goring for $3000, which, less the amount required to pay the Raymond mortgage, was received by Mrs. Caswell. November 26, 1870, Mrs. Caswell took the little boy George E. home with her and gave him the care and attention demanded by his tender years, and supported and clothed him until the 27th day of June, 1874, at which time he died. He was then about ten years of age.

On the occasion of the negotiations between Mrs. Caswell and Mr. Walker in May, 1871, the defendant Sherman notified them that he would be trustee no longer. Thereupon

Mrs. Caswell under the advice of Mr. Walker applied to the probate court to be appointed guardian of the child, and the court made the appointment. The defendant Sherman considered himself, and Mrs. Caswell considered him, legally absolved from further connection with the trust, and she gave him a paper in which she declared that he in his character of trustee had paid her $1000 in full of her interest in house and lot sold by him to Edward C. Walker, and that she released him as trustee from all responsibility to her on account of the trust. She also gave him another paper in which she acknowledged to have received from him $2000 in full of the share of the child in the real estate then sold by said Sherman as trustee to Edward C. Walker, and that the same was paid to her as the legal gurdian of the child under due appointment of the court of probate.

September 28, 1874, the complainant became assignee of all the interest of the defendant Andrew J. Cochran under or by reason of the trust deed, and of all rights, claims and interests in his favor in the estate of said child George E. Cochran, and on or about October 28th following, the complainant obtained appointment from the probate court of administrator of the child's estate and in the succeeding December he filed this bill. He required the defendants to answer on oath, and Sherman and Mrs. Caswell did so. Many of the main facts are admitted and there is little room for controversy in regard to most of the others. After some little testimony had been taken, a gentleman of the bar was appointed special commissioner to take the residue and to state the whole to the court with his opinion of the facts and the equities arising on them. His report bears date September 9, 1880, and he reached the conclusion that complainant was then entitled to $1013.17. Both parties excepted to his views and March 11, 1881, the court passed a final decree by which complainant was allowed $1872.52. The defendants Sherman and Mrs. Caswell appealed.

It is expedient to notice briefly at the outset certain points which apparently are now raised by appellants for

the first time. It seems to be suggested that the double
character in which complainant sues is a fatal defect. The
court think otherwise. The substance of the objection is
that different claims are prosecuted against the same defend-
ants and that there is consequently a misjoinder. *Campbell
v. Mackay* 1 Myl. & C. 618. In the first place the objec-
tion should have been taken earlier. But we find no such
disconnection as to cause any embarrassment. Indeed it
may be that the joinder of the estate was not indispensable;
still, if it was not, and the case would have been regular
without a representative of the estate on the record, it is
very plain that the defendants have suffered no prejudice
and that the court has not been embarrassed. If it was
proper, though not necessary, that the estate should be repre-
sented, the circumstances fixed the position. Being himself
representative it would have been irregular to have occupied
the position of defendant in a bill prosecuted by himself as
complainant.

It is next rather insinuated than urged, that since the
property in controversy was derived immediately from the
child's mother, the general provision in subdivision 2 of
Comp. L. § 4309 would not apply to the expression in the
deed of trust; but the identification of the "heir" would
be governed by § 4313, and *Ryan v. Andrews* 21 Mich.
229, where that section was considered, is referred to. The
purpose of this line of argument is to contend that Mrs.
Caswell and not her former husband, the complainant's
assignor, is the one pointed out to receive the remainder of
the proceeds of the house and lot by the term "legal heirs"
in the sixth provision of the trust deed. The reasoning is
ingenious, but is not sound. Several reasons might be
urged against it, but only a few words are called for. The
question is one of construction of the deed of trust. And
that instrument had no reference to the conditional or quali-
fied heirship provided for by the last-named section. It
did not contemplate a state of things for the operation of
that section and did not intend to devote the property to
anybody occupying the position and relation defined in that
47 Mich.—18

provision. The design was express and certain that the property should be converted from real estate to personalty, and the deed for our present purpose must be construed· as though that design had been fully executed, and hence the term in question must be understood and applied as it would be if the property had never been in any other form than that of personalty. The expression was intended to identify the person who should be *actually* in the place of legal heir, and not a person who might sustain that character under certain possible but non-existing conditions. The statute is dealing with the course of descent and not with the mode of distribution. It applies to real, but not to personal property.

It is next objected that complainant paid nothing to defendant Andrew J. Cochran for the assignment. Whether he did or not is of no concern to appellants. The defendant Andrew was free to pass the title by gift if he chose to do so. There is nothing in the litigation to raise any question of consideration in respect to that subject. The position that the acts of Mr. Sherman and the events connected with them effected a valid surrender or termination of his trust and a consequent relief from liability is manifestly erroneous, and the cases cited in its favor do not countenance it. The circumstance that the author of the trust, who was one of the beneficiaries, concurred in his acts and recognized and assented to his withdrawal and received from him and assumed the custody of the fund and undertook its management, can avail nothing. The chief beneficiary was an infant and not capable of assenting, and there were contingent rights which could not be bound unless by some act operating by estoppel, and the effect of the course pursued was to violate the trust Mr. Sherman owed to the infant and to the infant's possible successor and to abandon their rights and interests to Mrs. Caswell. The implication of the statute as well as the rules of equity all point the same way and against the view of counsel. §§ 4134, 4137, 4138, 4139, 4140; Hill on Trustees 221 marg.; Tiff. & Bull. on T. & T. 536; *Matter of Jones* 4 Sandf. Ch. 615; *Cruger v. Halli-*

*day* 11 Paige 314; *Gilchrist v. Stevenson* 9 Barb. 9; *Brennan v. Willson* 71 N. Y. 502; 2 Spence 917–921.

Mr. Sherman fully accepted the office and he thereby made it his legal duty to exercise reasonable skill and diligence in the execution of the respective trusts specified in the deed. This was not done. He made no effort to sell, but permitted complainant's mortgage to be foreclosed and allowed the time of redemption to approach its limit, and then united with Mrs. Caswell in an arrangement to place the title in the hands of Mr. Walker as an expedient to obtain means by a new mortgage to redeem from complainants, and in the same transaction, after making known to her and Mr. Walker that he would act no further in the trust, he joined with her in effecting, so far as it was practicable, a total transfer of the funds to her hands and to her custody and management. These acts amounted to a clear breach of trust and involved both the parties in liability. Story Eq. Jur. §§ 1267–1290; 2 Spence 920–941. Still it would be going far to say that the fault originated in bad faith.

In proceeding to decree in favor of complainant the circuit court rejected the scheme of the special commissioner and adopted a different one. But the scheme of the commissioner in its outline is believed to be the simplest and most equitable. Some changes in the details are considered proper. But it is not deemed necessary to fully discuss the reasons.

A recent case involved a discussion having some relevance, *Gott v. Culp* 45 Mich. 265, and reference is also made to Story and Spence just cited. The price for which the property might have been sold can hardly be rated higher, in view of all the circumstances, than $3500. Much reliance has been placed on the evidence that $4500 was actually bid for it at public auction. But that evidence was disputed, and it may be that two witnesses who gave it had forgotten the true sum. Still, whether they had or not, the auction occurred over a year before the trust was created, and the testimony is nearly or quite valueless as proof of

what Sherman might have sold for in 1869 or 1870 on the terms of $1000 or more down to redeem with and enough in addition to pay the quota designated for Mrs. Caswell. It is going quite far enough to fix it at $3500.

In the next place the interest should be computed at 7 per cent. instead of 10 as reckoned by the commissioner: That is the rate which our law has regarded as the proper one in the absence of an express contract for a higher rate and the case presents no reason for exacting more. The compensation for the care and support of the child for the period of one hundred and ninety weeks specified by the commissioner should be $5 per week instead of $6. The circumstances in evidence will scarcely warrant a larger allowance. The medical attendance during the last sickness is made the subject of a separate allowance, and there is no claim that the child was doctored at any other time. Nothing should be given the trustee by way of compensation. The ancient doctrine denied pecuniary recompense unless it was applied for and sanctioned by the court before acceptance of the trust, or perhaps unless the instrument of trust made express provision for it. Story Eq. Jur. § 1268; Fonbl. B. 2 ch. 7, § 3; 2 Spence 945, 946; Hill on Trustees; 577, 578, marg.; Tiff. & Bull. T. & T. ch. 8.

The accepted rule in this country, however, is, in case the matter is not otherwise regulated by statute, for courts of equity to exercise a just discretion and make or withhold allowance as they consider the particular circumstances require. In cases of misbehavior they are not inclined to give any, though this is not universal. The present is an instance where the trustee did nothing or nearly nothing, and where, if compensation should be allowed, it would be for constructive or imaginary service only, and where too a long and troublesome litigation is the fruit of the very non-feasance complained of. Adopting the scheme of the commissioner with these alterations, and computing interest from the child's death until the present time at seven per cent., the amount the appellants ought to pay is $830.

The decree below will be modified so as to conform to this opinion and the appellants will recover the costs of this court.

The other Justices concurred