SKELDING v. DEAN.

TRUSTS — MISCONDUCT OF TRUSTEES — PERSONAL DEALINGS WITH TRUST FUNDS—REPUDIATION BY BENEFICIARIES—LACHES.
A trustee of funds invested in bank at a low rate of interest, being in need of ready money in his business, and owning houses let at good rental, proposed to the beneficiaries of the trust, who were intelligent women of mature years, that they purchase the houses with the trust funds, which, after consideration, they did, at what appeared at the time to be a fair valuation, and afterwards received the rents. *Held*, that the beneficiaries could not, more than four years afterwards, after the trustee's death, and after the houses had depreciated in value owing to a general depreciation in the neighborhood, repudiate the transaction and have the sale set aside.

Cross-appeals from Wayne; Mandell, J. Submitted April 13, 1905. (Docket No. 39.) Decided July 24, 1905.

Bill by Fannie E. Skelding and Carrie E. Skelding against Lucretia A. Dean, executrix of the last will and testament of James N. Dean, deceased, Howard S. Dean,

trustee of the estate of Samuel M. Skelding, deceased, and others to set aside a sale of real estate and for an accounting. From the decree rendered, all parties appeal. Reversed, and decree entered for defendants.

*Brennan, Donnelly & Van De Mark*, for complainants.

*Russel & Campbell*, for defendants.

MOORE, C. J. The bill of complaint in this cause was filed March 5, 1903. From the decree entered therein both parties have appealed.

Fannie E. Skelding is the widow, and Carrie E. Skelding the daughter, of Samuel M. Skelding, who died June 27, 1894, leaving a will, by the terms of which all his property, real and personal, was devised and bequeathed unto James N. Dean, in trust for the use and benefit of his wife and daughter, the complainants in this suit. James N. Dean, the trustee named in the will, was also appointed executor. He was a second cousin of Mr. Skelding. Mr. Dean entered upon the discharge of the duties imposed upon him as executor and trustee. In January, 1898, he sold to the complainants the house and lot known as 35 Sibley street, the record title of which was in his son, and a deed of this property was made to the complainants. Mr. Dean drew from the trust fund as the consideration for the deed the sum of $9,000. In January, 1899, he sold to the complainants his house and lot known as No. 33 Sibley street, made a deed to them thereof, and paid himself out of the trust fund $8,500. James N. Dean died March 21, 1901. Upon the petition of the complainants Howard S. Dean was appointed trustee of their father's estate in April of that year. Mrs. Dean was appointed executrix of her husband's estate. Howard S. Dean and Harry J. Dean are sons of James N. Dean and Lucretia A. Dean. The bill of complaint was filed for an accounting, but principally for the purpose of having the two deeds to the Sibley-street prop-

erties set aside upon the ground of constructive and actual fraud. The trial judge filed a written opinion in the case, in which he used the following language:

"I am satisfied from the proofs that in the purchase referred to the complainants depended for advice solely upon their trustee, and relied solely upon his integrity and judgment, and depended upon that confidence and watchfulness for their interests that the law presumes a trustee shall always give to the management of trust funds. I am constrained further to find from the proofs that the property in question was sold to the complainants by their trustee at a price $5,000 in excess of its real value. This, in my opinion, amounted to a breach of trust. I do not find that there was any intentional wrong committed. It is well known that Mr. Dean always bore in this community the very best of reputations for honesty and probity; but I believe that, moved by his own pressing needs, and with a thorough belief that this property was worth fully what he received for it, he deemed the bargain a fair one.
\* \* \*

"Objection is made to these proceedings, it being claimed that the probate proceedings were final, and binding on complainants. The probate proceedings did not offer the same full relief that equity does. In view of what has been said, I find as fact:

"1. That the court of chancery has jurisdiction.

"2. That the sale of real estate mentioned in the bill of complaint worked as a constructive fraud on the complainants.

"3. That complainants are entitled to recover on the Dean and Carr notes.

"4. That defendant Howard S. Dean is not entitled to compensation for acting as trustee.

"5. That defendant Howard S. Dean is entitled to credit for amounts paid by him for expenses and attorney fees in the probate proceedings.

"A decree may be entered in accordance with these findings, but the defendants may have the option of either having the sale of the real estate set aside and accounting for the proceeds, or of paying the complainants the sum of $5,000 in lieu thereof."

A decree was made in accordance with the opinion. The complainants appeal from that part of the decree al-

lowing defendants the right to pay $5,000 and have complainants retain the Sibley-street property. They also appeal from the allowance made to Howard S. Dean for expenses and attorney fees. The defendants appeal from the decree generally.

At the outset the solicitors for defendants say the merits of the claim are not open for discussion, having been finally disposed of by the decree of the probate court, from which no appeal was taken. This claim is based upon the fact that the executrix of the estate of James N. Dean filed a final trustee account in the probate court in the estate of Samuel Skelding October 29, 1901. In this account the real-estate purchase was distinctly set forth, together with the price at which the property had been purchased. Both the complainants certified in writing upon the account that they had examined it, found it correct, and consented to its allowance. After the account was filed, a day was set by order of the court for hearing. It was regularly advertised, and on the day fixed for hearing the account, December 3, 1901, the account was regularly allowed by the probate court. No appeal was taken from this order. In support of this claim the solicitors cite many cases. In view of the fact that we have reached a decision on the merits, we deem it unnecessary to deal with this contention.

It is the claim of complainants that they never knew how much Mr. Dean charged them for the two properties until after his death, and that he in fact charged them five or six thousand dollars more than it was worth. It is the claim of the solicitors for complainants that:

"In order for complainants to prevail, all they had to prove was: (1) The fiduciary relation of James N. Dean, and (2) the transfer of the Sibley-street property, and the appropriation of their trust fund by the trustee in payment therefor;" citing many cases.

They contend, and we quote from the brief:

"If a person standing in a fiduciary relation makes use of his position to purchase an interest in the trust property

with his own funds, * * * he cannot retain the same for his own benefit, but he must hold it upon a resulting trust for his beneficiary. The prohibition of the purchase of trust property by the trustee does not depend on any question of fraud, but is made absolute to avoid the possibility of fraud. The temptation of self-interest is too powerful and insinuating to be trusted." 1 Perry on Trusts, § 129. "At law, fraud must be proved, but in equity there are certain rules prohibiting parties bearing certain relations to each other from contracting between themselves; and, if parties bearing such relations enter into contracts with each other, courts of equity presume them to be fraudulent, and convert the fraudulent party into a trustee; and herein courts of equity go further than courts of law, and presume fraud in cases where a court of law would require it to be proved; that is, if parties within the prohibitive relations or conditions contract between themselves, courts of equity will avoid the contract altogether without proof, or they will throw upon the party standing in this position of trust, confidence, and influence the burden of proving the entire fairness of the transaction." 1 Perry on Trusts, § 194. "It is thus seen that the rule against purchasing by trustees of the cestui que trust amounts almost to prohibition; for, if a trustee purchases the property and sells at a profit, he must account for it as a trustee, not because there was any fraud in the transaction, but because it is against the policy of the law to allow such transactions. Nor is it material that there should be an advantage or profit arising out of a purchase by the trustee from the cestui que trust. It is not necessary to prove such advantage or profit. It is enough to show the relation and the purchase. The trustee can make no profit from his management of the estate, and he is bound not to put himself in any position where his private interests may conflict with the interests of the cestui que trust. If a trustee purchases the trust property the cestui que trust may have the purchase set aside and the property resold." 1 Perry on Trusts, § 197.

These general propositions are not controverted by the solicitors for the defendants, but they say this case comes within well-recognized exceptions to the general rule. They insist the complainants were of full age; that they were fully advised of all the facts at the time the deeds were made; that the consideration was a fair one; and

that, if the property had not depreciated in value since the purchase was made, this bill would never have been filed. In 1 Perry on Trusts, § 467, the following language is used:

"If trustees make an improper investment with the knowledge, assent, and acquiescence or at the request of the cestui que trust, they cannot be held to make good the loss, if one happens; but the cestui que trust to be affected by such consent or acquiescence must be sui juris, and capable of acting for themselves."

See, also, 2 Beach on Trusts and Trustees, § 520, and cases cited; *Poole* v. *Munday*, 103 Mass. 174; 2 Perry on Trusts, §§ 849–852, 870.

In *Campau* v. *Van Dyke*, 15 Mich. 371, Justice CHRISTIANCY, speaking for the court, said:

"The same rule of diligence and reasonable time applies when property is sold by a trustee and purchased by or for him on his private account. The purchase is void, at the option of the cestui que trust; but he will be held to affirm it by acquiescence for an unreasonable length of time, and three years has been held unreasonable. *Jennison* v. *Hapgood*, 7 Pick. (Mass.) 1. See, also, *Davis* v. *Cotten*, 55 N. C. 430; *Monroe* v. *Delevan*, 26 Barb. (N. Y.) 16."

In *Quimby* v. *Uhl*, 130 Mich. 198, it was said:

"Where beneficiaries either expressly or impliedly assent to the action of their trustee in managing their property not in strict accord with the terms of the trust, they will be held to have acquiesced in such action. See authorities above cited; also 11 Am. & Eng. Enc. Law, p. 841; *Heyn* v. *O'Hagen*, 60 Mich. 150. A party cannot complain when he has consented. *Barton* v. *Gray*, 57 Mich. 636."

The case of *Hammond* v. *Hopkins*, 143 U. S. 224, is in many respects like the case at bar. In disposing of the case Chief Justice Fuller used the following language:

"The main contention here is that the sale of May 10, 1864, should be set aside as to the purchases by the trustees through Chapman, on the ground of constructive, coupled with actual, fraud. Undoubtedly the doctrine is estab-

lished that a trustee cannot purchase or deal in the trust property for his own benefit or on his own behalf, directly or indirectly. But such a purchase is not absolutely void. It is only voidable, and, as it may be confirmed by the parties interested directly, so it may be by long acquiescence, or the absence of an election to avoid the conveyance within a reasonable time after the facts come to the knowledge of the cestui que trust. * * *

"If the party, in view of all the facts of the case, has slept upon his rights, a court of chancery will not intervene; and in measuring laches there are two extremely important considerations always taken notice of by a court of chancery, which limit and narrow the measure of time which otherwise would be liberal. Where there has been no change of circumstances between the parties, and no change with reference to the condition and value of the property, a court of chancery will run very nearly, if not quite, up to the measure of the statute of limitations as applied in analogous cases in a court of law. But where there has been a change of circumstances with reference to the parties and the property, and still more where death has intervened, so that the mouth of one party is closed, and those who represent his interests are not in a predicament to avail of the explanations which he might have made, out of the charities of the law and in consideration of the fact that fraud is never to be presumed, but must always be proved and proved clearly, the courts limit very much, in such cases, the measure of time within which they will grant relief, because the presumption comes in aid of the dead man that he has gone to his account with a clear conscience."

Apply these principles of law to the case at bar. When the first of these deeds was made the daughter was 30 years old, and the mother 60 years old. They were women of intelligence. When Mr. Dean proposed they should buy this property, after thinking the matter over a few days, they assented to it. There is no claim that anything was withheld from them except the consideration. They say they did not ask about the consideration, and were not told. The deeds were delivered to them, and they retained them in their possession. The daughter knew the property, and we cannot resist the inference

that the mother also knew it. The daughter testified that before the deed was made she discussed with her mother the advisability of putting the money which was in the bank into this investment. They knew that one of the houses rented for $50 a month and the other for $45 a month. We have not overlooked the fact that both of them testified they relied wholly upon Mr. Dean's judgment, and had no knowledge of the consideration until after Mr. Dean's death. And yet Miss Skelding prepared a paper in her own handwriting as early as October, 1899, showing that the value put upon the two properties was $17,500. Harry J. Dean testified he had a talk with Mrs. Skelding, in which she told him that the cost of one house was $9,000 and the other $8,500, and that he also had a talk with Miss Skelding, and as the result of it credited his father's estate in the account of his mother as executrix by lots 33 and 35, $17,529.90. The final account of Mrs. Dean as executrix of her husband's estate was filed in October, 1901. It contained the above credit. It also contained nearly 50 items of $45 and $50 each for rent received from the Sibley property. On the back of this report is the following indorsement:

"We the undersigned, sole beneficiaries by and under the last will and testament of Samuel M. Skelding, deceased, do hereby certify that we have examined the foregoing account, and find the same to be correct, and we do hereby consent to the allowance thereof, and ask the court to accept the same.

"FANNIE E. SKELDING.
"CARRIE E. SKELDING."

The first item on the credit side was "Bought lots No. 33 and 35 Sibley, $17,529.90." It would seem that even a casual examination would discover this item. This final account was allowed, the trustee discharged, and the bond canceled December 3, 1901. We have not overlooked the claim of complainants that this indorsement was made at the request of Howard S. Dean without their knowing what the paper contained. The fact is, however, that this

paper was sent to them. They had it for several days, signed it, and then returned it.

Nor have we overlooked the claim of counsel, and we quote from their brief:

"And now comes the most convincing act of all. This last lot was deeded in January, 1899. On March 9th following he files his final account as executor, and purposely avoids mention of these purchases of real estate, but reports to the probate court that he has cash on hand. A comparison of this report with the journal from which it is taken shows how these real estate items were purposely omitted. In the disbursements commencing the year 1898 we have first the date January 27th, then February 8th. Turning to the journal we find interlined between these two dates the entry, 'February 2nd, Harry J. Dean, $9,000.' Again, commencing with the year 1899, in the report we find the first item is January 31, 'Detroit Water Works, $2.95.' Turning to the journal entry from which this was taken we find these two items were omitted, 'January 26th, Harry J. Dean, $7,000;' 'January 26th, Harry J. Dean, $931.70.' What possible object could the trustee have had in omitting these items but that of concealing the fact from the probate court, knowing that he had committed a gross breach of trust?"

We think an examination of the items of the account is a complete answer to the inference sought to be drawn. It purports to be the account of Mr. Dean as executor, and not as trustee. Attached to it is a receipt for the balance running from Mr. Dean as trustee to Mr. Dean as executor. In it Mr. Dean charges himself with 11 different items, $50 each, of rent received from Mr. Steinfeld, the tenant in the Sibley house, and credits himself with a payment made in 1898, "October 12, Gray for grate at 35 Sibley St. $6.00." There is a signed statement on the back of this account, signed by the complainants, stating they have examined it, that it was correct, and asking that it be allowed; and it was allowed. If Mr. Dean was attempting to conceal this sale from the court, it is hardly credible he would have put in these eleven items about the rent and the one about the grate.

It will not do to dispose of this case without remembering James N. Dean is not here to give his version of the transaction.   In his lifetime he had the reputation of being an honest man.   He had the confidence and respect not only of Mr. Skelding during his lifetime, but of Mrs. Skelding and her daughter.   As late as July, 1900, Mrs. Skelding made a will, which provided that if she survived her daughter, in case he was then living, that James N. Dean should have the house and lot at No. 33 Sibley street and $5,000, evidenced by a note which she then held of the Harry J. Dean Company.   The conclusion we reach from a careful reading of this voluminous record is that it was talked over between these adult women and Mr. Dean that he needed the money in his business which was invested in these two houses, and that it would be of mutual benefit for the complainants to use the money which was in the bank, drawing a low rate of interest, to buy these respective pieces of real estate which were bringing a good rental at the prices Mr. Dean credited himself; that after these suggestions were made they were discussed by the mother and daughter, and they decided it would be a good thing to do, and it was done, the first deed being made in January, 1898, and the second one in January, 1899; and that from that time until this bill was filed, more than four years later, and two years after the death of Mr. Dean, they regularly received rent for this property, it being collected by the trustees, and going into their account.   It was not until two years after Mr. Dean's death, and after property generally in that neighborhood depreciated in value, that any attempt was made to repudiate this transaction.   We think this attempt comes too late, and that complainants should retain the Sibley-street property at the price charged.

We have considered the item allowed for expenses and attorney's fees.   Mr. Dean was allowed nothing for his services, and we are not inclined to disturb the allowance made him for these disbursements.

The decree is reversed, and one may be entered here in accordance with this opinion.

CARPENTER, MCALVAY, OSTRANDER, and HOOKER, JJ., concurred.