*In re* SHAILER ESTATE.

APPEAL OF FIDELITY & DEPOSIT CO. OF MARYLAND.

1. TRUSTS—POWERS OF TRUSTEE—CONSENT OF BENEFICIARY—INFANTS—RATIFICATION OR DISAFFIRMANCE.

Where a beneficiary, before reaching majority, urged and persuaded the trustee to use part of the estate to purchase a store and business to be run by the beneficiary and her husband for the former's benefit, and no attempt was made after becoming 21 years of age by the beneficiary to disaffirm the action of the trustee, her grandaunt, who supported and aided the beneficiary during her minority, apparently occu-

pying the position of a parent towards her, the action of the trustee in employing the estate for such purpose was with the consent of the beneficiary and therefore valid under a trust instrument investing the trustee with full power to sell, exchange, or reinvest the estate property.

2. SAME—ACCOUNTING.

An investment of $1,400 being made with trust funds at the request of the beneficiary, in property which was mortgaged to raise further sums amounting to about $1,200, the original amount so invested should have been credited to the trustee on final accounting; no credit should be allowed for the sums obtained on the mortgage which was foreclosed and the property bid in to satisfy the debt.

3. SAME—COMPENSATION.

The court on appeal will not interfere with the exercise of discretionary power by the lower court in refusing to allow compensation to the trustee, who, during her lifetime, made no claim therefor and probably had no intention of asking for it.

4. SAME—COSTS.

The costs of a suit instituted by the trustee to recover property of the estate, in which the trustee was defeated and costs awarded and paid, should be allowed out of the estate.

Error to Bay; Gage, J., presiding.   Submitted June 7, 1912.   (Docket No. 45.)   Decided November 8, 1912.

Matilda E. Daglish presented for allowance her final account as trustee under the will of Harriet C. Shailer, deceased.   From an order of the probate court settling the accounts of the trustee, after her death, and the appointment in her stead of Albert E. Miller as trustee, the Fidelity & Deposit Company of Maryland appealed to the circuit court.   From the order entered, appellant brings error.   Reversed.

*Curtis E. Pierce* and *John E. Kinnane*, for appellant.

*W. A. Collins*, for appellee.

The matter in issue in this proceeding arises out of the

trust created in the will of Harriet C. Shailer. The important provisions follow:

"I appoint Henry R. Wooster, of Saybrook, trustee of all the residue of my estate to be held in trust for my grandchildren, to wit: Harry Wilmot Bradley, Harriet Wilmot Bradley and Rose Wilmot Bradley, each to receive one-third of the income thereof, or so much as may be necessary to be used for their support and education, and if the income shall be insufficient, then so much of the principal as may in the discretion of said trustee or his successor in said office be necessary for that purpose, and to this end I do hereby devise and bequeath to said trustee all of the residue of my estate aforesaid, vesting in said trustee full power to sell, exchange all or any portion of said property and to re-invest the same as will in his judgment be for the interest of said legatees.

"Upon reaching the age of twenty-one years of either of my said grandchildren, the income of his or her share shall be paid directly to said legatees, and upon attaining the age of twenty-five years, respectively, the full share, including principal and income, shall be paid or transferred to said legatees.

"Said trustee is required to make annual returns of the condition of said estate to the probate court, and he is also to give suitable bond for the faithful discharge of the duties of said trust, and said bond may be furnished by any of the surety companies of this State and the costs thereof to be paid from my estate.

"In the event of the death of either of my grandchildren before the age at which the estate is to vest, viz., twenty-five years, said share is to go to and vest in the survivors absolutely."

The will was duly admitted to probate, and the trust was executed in so far as it related to Harry Wilmot Bradley and Harriet Wilmot Bradley. On March 26, 1902, Matilda E. Daglish, a sister of the testatrix, and therefore a grandaunt of the remaining *cestui que trust*, was appointed trustee of the trust created by the will. She qualified as such trustee, and gave a bond in the penal sum of $8,000, with the appellant as surety thereon. At the time of her appointment, the trustee receipted to the judge of probate for personal property valued, according

to the inventory, at the sum of $6,980.73. From 1902 to 1907 Mrs. Daglish seems to have handled the estate without rendering any account of her dealings to the probate court. On September 19, 1907, she filed an account with that court which showed alleged disbursements (exclusive of any compensation to herself as trustee) on behalf of her *cestui que trust* to an amount upwards of $600 in excess of the value of the estate which she had received, including the income thereof. No hearing was had upon this account before the death of Mrs. Daglish, which occurred October 28, 1908. After her death, one Albert Miller was appointed trustee of the estate, and upon his petition the account of Mrs. Daglish was heard and passed upon without notice to the surety upon her bond. Upon this hearing, the probate court found that Mrs. Daglish as trustee was chargeable with a balance amounting to $6,483.23. Thereafter the Fidelity & Deposit Company appealed from said order.

The circuit court restated the account, finding a balance due from the estate of Mrs. Daglish to the trust estate in the sum of $5,831.91. Upon this hearing the court filed findings of law and of fact. Appellant proposed amendments thereto, and, after considering the same, the court filed his findings as to the facts and the law as follows:

### " FINDINGS OF FACT.

"(1) The court finds: The value of the 200 shares of capital stock of the Iron-Silver Mining Company of Colorado, being certificates Nos. 18079 and 18080, at the time of the sale and conversion thereof, was $180, or 90 cents a share.

"(2) That the income and dividends received by the trustee, Matilda E. Daglish, during the period of her trusteeship was $1,294.

" (3) That Matilda E. Daglish was appointed trustee of the trust created by Harriet C. Shailer, deceased, and qualified as such on March 26, 1902, the appointment being made by the probate court of Bay county. That Harriet C. Shailer died on January 23, 1893, leaving a last will, which was admitted to probate, and is in evi-

dence in this case. That of the three beneficiaries named in said will Harry W. Bradley died while a minor without issue. Harriet W. Bradley, another beneficiary, received her share of the estate and trust funds on arriving at the age of 25 years. That Rose Wright West, who prior to her marriage was Rose Wilmot Wright, was the sole remaining beneficiary under the will. That Matilda E. Daglish was a sister of said Harriet C. Shailer, and Rose Wright West was a granddaughter of said Harriet C. Shailer. Said Rose West was about nine years of age when Mrs. Shailer died, and from that date she made her home with, and lived with, Mrs. Daglish, and the two lived and treated each other practically as mother and daughter until the marriage of Rose West. That after the marriage of Rose West in 1903, she and her husband, and later her two children and Mrs. Daglish, lived together a considerable portion of the time until Mrs. Daglish died October 28, 1908, and were furnished with money by Mrs. Daglish at frequent intervals.

"(4) That in December, 1905, Mrs. Daglish, on the request and solicitation of Rose West, purchased a store and business in Cleveland, Ohio, for Rose West, and she and her husband took possession of the business and ran it until July, 1906. That the money for the purchase of the business was borrowed from the Commercial Bank in Bay City, and the following trust property was pledged by said trustee to said bank as security for the money so borrowed, viz., bond No. 1329 of Ohio & West Virginia Railroad Company, five shares of stock of the National Shoe & Leather Bank, 200 shares of the capital stock of the Iron-Silver Mining Company. The money so borrowed, amounting to $1,900, was sent to Rose West in Cleveland by Mrs. Daglish in New York drafts, payable to the order of Rose West, and was used by her in the purchase of the said store and business. That $100 more was advanced by Mrs. Daglish about the time of the purchase of the store. That in June, 1906, Mrs. Daglish took $200 from Bay City to Cleveland to pay indebtedness accruing in Cleveland store and business. In July, 1906, Mrs. Daglish took possession of the store, and closed it out, and settled up the indebtedness and liabilities in connection with it, and received, after the payment of all of the liabilities, the sum of $200, which was all that she saved out of the venture. That Rose West became 21 years of age on the 30th day of May, 1906. That she became 25 years

of age on the 30th day of May, 1910, and that she was married in the fall of 1903. That after becoming 21 years of age in May, 1906, she and her husband continued to operate said store and business in Cleveland, and she made no objection to the action of her trustee in making such investment. That she first knew that the money that went into the Cleveland store business was borrowed by her trustee at the Commercial Bank, and property from the trust funds pledged to secure the repayment of the same, when she was with Mrs. Daglish at the times when said notes were renewed. After the death of Mrs. Daglish in October, 1908, she was personally notified by the Commercial Bank that said notes were past due, and that the securities would be sold if payment was not made; said letter being dated November 25, 1908. That no action of any kind was taken by Rose West objecting to or disaffirming the Cleveland store investment.

"(5) In January, 1909, Albert Miller, who was appointed trustee to succeed Mrs. Daglish, demanded the surrender of the securities held by the Commercial Bank for the above loan, and later in the same month brought suit in chancery in the circuit court for the county of Bay to compel said bank to surrender said securities, on the ground that they were unlawfully pledged by the trustee, and that such pledging was unauthorized and invalid. Said cause was heard on pleadings and proofs and the bill was dismissed, the ground for such dismissal being set forth in the opinion of Judge Sharpe filed in said cause, and which is in evidence in this case. Said decree has not been appealed from nor set aside.

"(6) That the investment and expenditure in the purchase of the Cleveland store and business was made solely for Rose West, at her request, with the expectation on the part of all that it would be successful and furnish employment for Rose West and her husband and benefit them and the trust funds. That Rose West knew all about the transaction, and urged Mrs. Daglish to buy the store and business for her with the understanding that the money put into it would come out of Rose West's share of the Shailer estate in the hands of Mrs. Daglish as trustee.

"(7) In April, 1908, Rose West sought to persuade Mrs. Daglish to assist her and her husband to invest in a limekiln at Omer, Mich. The purchase price of said limekiln was to be $7,000. Two thousand dollars was required to make the first payment. Mrs. Daglish raised $1,400 in some

manner, and then negotiated the purchase of the property at the above price for and in the name of Mrs. West's husband and one McDonnell. Mrs. Daglish then took back from this firm a mortgage for $2,000, and put that up with the Arenac Exchange Bank for a loan of $600, which she then turned over to be applied by West and McDonnell as the balance of the $2,000 advance payment on the purchase price of the limekiln property. After the death of Mrs. Daglish, the mortgage in question was foreclosed by the Arenac Exchange Bank, and the property was purchased by said bank, on the foreclosure for the amount of its mortgage. A couple of months after the original purchase of the limekiln property, Mrs. Daglish again hypothecated the $2,000 mortgage to the Arenac Exchange Bank for an additional loan of $600. This $600 was raised for the purpose of building a new kiln on the limekiln property, and a considerable portion of it was used for that purpose; the same being advanced by Mrs. Daglish as needed. This investment of Mrs. Daglish in said limekiln property was induced by the solicitation and persuasion of Rose West and her husband.

"(8) That while Rose West and Mrs. Daglish were living at Omer, and while the limekiln was being operated, Mrs. Daglish was taken sick and died on October 28, 1908. After her death a fire occurred which destroyed a considerable portion of the limekiln property, and it was abandoned. The Arenac Exchange Bank foreclosed the mortgage which Mrs. Daglish had hypothecated to it for the loans aforesaid, and the limekiln property was sold on the foreclosure for the amount due said bank.

"(9) That Mrs. Daglish paid in interest to the Commercial Bank of Bay City on the loan which she made in 1905, on the trust securities in her hands as above stated, for the purchase of the Cleveland store and business, the sum of $400.99. That the original note given when the loan was made in 1905 was renewed from time to time, and in 1907 $1,000 was paid upon said loan by the sale to said bank of the Ohio & West Virginia Railway bond, which was one of the securities hypothecated for the loan. Interest was paid at the time of the several renewals during the lifetime of Mrs. Daglish of the balance of said loan which remained unpaid. That, after the death of Mrs. Daglish, Albert Miller was appointed to succeed Mrs. Daglish as trustee of said trust, and he brought suit against the Commercial Bank to recover the securities so hypothecated,

which suit was commenced in January, 1909, and was finally decided about one year later. Shortly after this decision, the securities which had been hypothecated to the bank were sold, and the indebtedness of the bank, together with the interest and costs of the suit by Albert Miller, trustee, were satisfied and paid out of the proceeds of such sale. That the costs of the suit brought by Albert Miller against the Commercial Bank were taxed at the sum of $47.27, and were paid out of the proceeds of the sale of the securities hypothecated to the bank as above set forth.

"(10) That Mrs. Daglish was appointed trustee in March, 1902, and continued to act as trustee until her death on October 28, 1908, a period of 6½ years. That on September 21, 1908, Rose West started on a trip to Conneautville, Pa., and received from Mrs. Daglish on the Arenac Exchange Bank a check for $100, which was indorsed by said Rose West, and paid through said bank on said day. That said Rose West on the last-mentioned date received for her own purposes the sum of $50 from said trustee, as part of said check.

"(11) Proposed finding of fact No. 11 is refused. All of appellant's proposed findings of fact that are not embodied and found in the foregoing findings are refused by the court.

## "FINDINGS OF LAW.

"(1) Appellant's proposed finding of law No. 1 is refused, and the court finds that said trustee is not entitled to any credit on account of the Cleveland store and business.

"(2) Appellant's proposed finding of law No. 2 is refused, and the court finds that said trustee is not entitled to any credit on account of the limekiln investment at Omer, Mich.

"(3) Appellant's proposed finding of law No. 3 is refused, and the court finds that said trustee is not entitled to any credit for interest paid on the Commercial Bank loan, or for cost taxed in the suit brought by her successor against the Commercial Bank.

"(4) Appellant's proposed finding of law No. 4 is refused, and the court finds that said trustee is not entitled to any compensation for her services as trustee in said estate.

"(5) Appellant's proposed finding of law No. 5 is refused, and the court finds that said trustee is not entitled to

any credit on account of the 50 shares of stock of the Concrete Machinery Company of Detroit.

"(6) Appellant's proposed finding of law No. 6 is refused, and the court finds that said trustee is entitled to credit of fifty dollars ($50.00) only for said check of September 24, 1908."

Appellant claims that the balance found against the estate of Matilda Daglish should be reduced by the following items:

| | |
|---|---:|
| The item for the Cleveland store and business.....$2,000 00 | |
| The item for the Omer Limekiln matter........... 2,600 00 | |
| For services of trustee during during the period of said trust, 6½ years at $50 per year........... 325 00 | |
| The sum paid for interest to the Commercial Bank on the loan made to purchase the Cleveland store and business .............................. 400 99 | |
| The item of costs in the suit of *Albert Miller, Trustee*, v. *Commercial Bank*.................. 47 20 | |
| The express charged against said trustee on account of the Iron & Silver Mining Co. stock.... 220 00 | |
| Addition credit on account of $100 check on Omer Bank.............................................. 50 00 | |

If these items are allowed, a balance against the trustee would still remain in the sum of $188.79.

BROOKE, J. (*after stating the facts*). We will consider the claimed items of credit in their order. At the outset it is pertinent to observe that the powers conferred upon the trustee by the instrument creating the trust are peculiarly broad. The beneficiaries are each to receive from the trust fund—

"One-third of the income thereof, or so much as may be necessary to be used for their support and education, and if the income shall be insufficient, then so much of the principal as may in the discretion of said trustee or his successor in office be necessary for that purpose, and to this end I do hereby devise and bequeath to said trustee all the residue of my estate aforesaid, vesting in said trustee full power to sell, exchange all or any portion of said property and to reinvest the same as will in his judgment be for the interest of said legatees."

Acting under the powers conferred by this instrument, the trustee, who was the sister of the grandmother of the *cestui que trust*, allowed Mrs. West, her ward, to persuade her to make the Cleveland investment in December of the year 1905. At the time the investment was made, Mrs. West was between 20 and 21 years of age. As soon as the business was purchased, Mrs. West and her husband went into possession and management thereof, and so continued until about July of the year 1906. In the meantime Mrs. West became of age on May 30, 1906. Upon reaching her majority, Mrs. West did not attempt to disaffirm or repudiate the act of her grandaunt and trustee, but by continuing in possession and control of the business thereafter tacitly affirmed the transaction. It is to be noted, further, that though her trustee, Mrs. Daglish, lived about 2½ years after she (Mrs. West) became of age, no steps were taken to question the transaction. The relationship between Mrs. West and her trustee was of a peculiarly intimate character. They lived together from the time Mrs. West was nine years old until the death of Mrs. Daglish, and during all that period, even after the marriage of Mrs. West, Mrs. Daglish contributed largely to the support of Mrs. West and her children. When Mrs. Daglish died, it was found that she had made Mrs. West the sole beneficiary under her will; the inventory of the estate showing it to be of the value of about $1,000. These two people seem to have sustained toward each other the sentiments of a fond and perhaps overindulgent mother and a loving daughter. Had Mrs. Daglish continued to live, it is only fair to Mrs. West to say that it is believed no steps would ever have been taken by her or in her behalf to compel her aunt and trustee to pay to her again money which had once been paid at her earnest solicitation, and the benefit of which she had enjoyed. The fact that Mrs. Daglish is now dead should not be permitted to weigh in the consideration of the question. It should be treated exactly as if Mrs. West herself were

now seeking to recover from her trustee this sum which she has already succeeded in persuading that trustee to turn over to her in person and which she has used.

In *Quimby* v. *Uhl*, 130 Mich. 198, at page 212 (89 N. W. 722), it is said:

"Where beneficiaries either expressly or impliedly assent to the action of their trustee in managing their property not in strict accord with the terms of the trust, they will be held to have acquiesced in such action"—citing cases.

See, also, *Skelding* v. *Dean*, 141 Mich. 143 (104 N. W. 410), and authorities there cited and reviewed.

It is urged that, when the Cleveland investment was made, Mrs. West was an infant, and therefore incapable of consenting to an unlawful use of the trust estate. This is true, but, as already pointed out, she became of age a few months later, and by her acts thereafter clearly implied her consent. Her failure to disaffirm the acts of her trustee during the 2½ years following, while said trustee was alive, is also significant. We must hold that the $2,000 constituting the Cleveland investment should have been allowed as a credit in the account of Mrs. Daglish. It necessarily follows that the item of $400.99 paid out by the trustee as interest upon the loan from the proceeds of which this advancement was made should likewise have been allowed.

The Omer limekiln item of $2,600. We are unable to discover from the record that the trustee advanced for this purpose more than $1,400, either from her own estate or that of her *cestui que trust*. The balance of $1,200 was raised by hypothecating a mortgage for $2,000 upon the property itself. This investment was unquestionably made by the trustee for the benefit of Mrs. West and at her request. Mrs. West was at the time about 23 years of age, and knew that her estate was being used for the purpose of raising the money. This item to the amount of $1,400 should have been allowed.

Touching the demand for an allowance for compensa-

tion of the trustee, we are of opinion that it should be denied. During the 6½ years the trustee acted she made no demand for compensation for her services in that capacity, and, considering the facts in the case, we have no doubt she had no intention of ultimately making such a demand. In any event, the allowance of a claim to compensation by a trustee is a discretionary matter, and we have no disposition to disagree with the finding of the learned circuit judge upon this point. *Henderson* v. *Sherman*, 47 Mich. 267 (11 N. W. 153). The item of $47.20, costs in the suit of *Miller, Trustee,* v. *Commercial Bank*, should have been credited. We think the other claimed credits were properly denied. Deducting from the balance found by the circuit judge the sum of the credits above allowed will leave a balance of $1,983.72.

The judgment is reversed, and the case is remanded to the circuit court, with directions to enter a judgment in accordance with this opinion. Appellant will recover costs of the appeal.

MOORE, C. J., and STEERE, MCALVAY, STONE, OSTRANDER, and BIRD, JJ., concurred.