# IN RE TRUSTS CREATED BY WALTER BUTLER UNDER WRITTEN INDENTURE OF TRUST DATED JUNE 18, 1920, WITH BUILDERS TRUST COMPANY AS TRUSTEE.[1]

January 17, 1947.

No. 34,228.

---

[1]Reported in 26 N. W. (2d) 204.

*L. P. Sheahan,* for appellant.
*Patrick J. Ryan,* for respondents.

MATSON, JUSTICE.

Appeal by Builders Trust Company from an order of the district court interpreting the language of certain trust indenture provisions and, in connection therewith, disallowing certain items of trust administration expense.

In 1920, appellant was incorporated by three brothers, John, Walter, and Emmett Butler, as a trust company under the Minnesota

198

statutes thereto pertaining. Subsequently in the same year, John established seven, Emmett six, and Walter Butler six trusts for their respective families, and appellant was in each instance named and qualified as the trustee. In 1927, it ceased to be trustee of the John and Emmett Butler trusts but continued as trustee of the Walter Butler trusts. At present it continues to act as trustee for three of the original trusts established by Walter Butler, namely, the three trust estates involved herein, and in addition acts as trustee for three additional trusts established by one of the beneficiaries. According to the record, no other trust business has been, or now is, conducted by appellant. Walter Butler, from 1927 to the time of his death in 1933, owned, aside from certain shares held by the immediate members of his family, all of appellant's common stock. Upon his death, all stock was acquired by his widow and his three children. In 1937, Robert Butler, son of Walter, acquired and has since owned all the common stock aside from a few qualifying shares.

From the date of its organization in 1920, appellant (hereinafter called the trustee) has furnished complete and detailed quarterly statements of its receipts and disbursements as trustee to each of the beneficiaries, but at no time have any accounts of its stewardship been submitted to the court for its approval. Upon petition, however, the court in 1943 authorized the trustee to incur certain attorneys' fees. Each successive quarterly statement included summaries of all previous receipts, disbursements, and balances year by year. At no time did the statements show disbursements chargeable against the respective trust estates for any items other than trustee's fees, taxes, safe-deposit rentals, and bond premiums. In 1927, however, Cooley Butler demanded that Butler Brothers, a family firm in which he owned approximately 27 percent of the stock, be reimbursed for keeping the books of the trustee for 1927 and prior years, and thereupon the trustee's directors adopted a resolution authorizing and directing that a check be issued to Cooley Butler for 27 percent of the costs of such bookkeeping and that the amount thereof be apportioned and charged against the various trusts. The apportionment and charge were made, but in the quarterly statements the

charge, according to the testimony, appears as part of the trustee's fees and not as an administration expense item. At no time did the quarterly statements show a charge, or indicate that a charge would ever be made, for the salaries of Erickson and Faricy (hereinafter referred to) or any other employe, or for office rent, light, general telephone service, and stationery.

As its two sole employes, the trustee has employed James R. Faricy from 1929, and Einar Erickson from 1932, to date, each on a part-time basis. The latter's services have been devoted exclusively to the maintenance of bookkeeping records of the trusts, and the former, in addition to certain general clerical work, to the investigation and report on various securities proposed for the investment of trust funds. On the record, it appears that the work of these two employes has been purely ministerial and that any work involving the exercise of judgment and discretion has been performed by Robert Butler as president. There is testimony that the total of the annual salaries paid to Erickson and Faricy exceeds the annual compensation of the trustee.

It is to be noted that pursuant to pertinent trust provisions a certain portion of the net income was each year distributed to the respective life beneficiaries and that the undistributed portion of such income was accumulated and added to the trust principal. The trust indentures also contain certain provisions for the benefit of remaindermen.

In proceedings brought pursuant to Minn. St. 1945, § 501.35,[2] the trustee sought the court's interpretation of certain trust provisions common to all three of the trusts involved herein, namely, with respect to the following paragraphs:

"12. *Expenses—Trustees' compensation.*

"There shall be paid out of and deducted from the gross income all expenses incurred in the administration and protection of the trust estate, all taxes, and the compensation of the Trustees. The Trustee or Trustees shall have a right to receive compensation for their services, to be determined by the Trustee or Trustees, but the aggregate

[2]See, M. S. A. § 501.35, and cf. Mason St. 1940 Supp. § 8100-13.

of such compensation shall not exceed five per cent (5%) of the gross income of the trust estate, and the amount paid to the Trustee or Trustees as such compensation at the time of the distribution of the principal of the trust estate or any part thereof shall not exceed three per cent (3%) of the amount of the principal distributed."

"22. *Offices, Clerks, Etc.*

"The Trustees are hereby empowered to employ such clerks and other persons and to do and perform such acts and things as they may deem requisite for the proper and convenient execution of said trust, *and all expenses, including the compensation of the Trustees, shall be paid or provided for prior to any distribution of income or principal to the beneficiaries in this instrument designated and prior to the accumulation and addition of income to the principal or body of the trust estate."* (Italics supplied as to final clause.)

The trustee in its petition to the court prayed for an order "adjudicating and accordingly instructing" it that "in respect to each item of expense" incurred since the inception of the trust "on account of office expenses, clerk hire, attorneys' fees, taxes and of other nature are and each of the same is allowable as a proper item of expense to the Trustee in each instance," and determining that the trustee shall, as to "each such expenditure," be entitled to full reimbursement without limit as to time. Evidence in accordance with this comprehensive prayer, with particular emphasis upon the nature and extent of the clerical services performed by Erickson and Faricy, was submitted to the court for its consideration. Pursuant to the hearing on the petition, the trial court made an order which provides:

"It is the opinion of the Court and the Court instructs the trustee that *said provisions* of said instruments mean and *include such expenses* incurred in the management and administration of each separate trust *as are peculiar to each such trust. They do not cover or include expenses incurred or paid in the general conduct of the business of the trust company.* To be specific, and giving effect to the testimony adduced on the hearing, *the trustee is instructed that the salaries paid to Messrs. Faricy and Erickson,* now and for a long time

past employed by the trust company, *are and have been expenses incurred in the general operation of the business of the company. The rent paid by it for office space has been and is such a general business expense. So are expenditures by it for light, general and ordinary telephone service, and stationery.* No part of such expenditures may be charged against the trust funds involved in this proceeding." (Italics supplied.)

On appeal, the trustee contends (1) that the court erred in holding that the specific expenditures for clerical hire and office rental were not properly chargeable against the trusts involved; and (2) that the court exceeded its jurisdiction by not limiting its determination to a construction of said paragraphs, but actually determining as a fact (and contrary to the evidence submitted) that the specific expenditures described were not for the benefit of or peculiar to the trust involved, but were in the nature of general expenses, for which the trustee alone was responsible.

We observe at the outset that the aforesaid trust provisions are not inconsistent with Minn. St. 1945, § 48.80,[3] providing that for the faithful performance of its duties a trust company shall be entitled to reasonable compensation and to reimbursement for all necessary expense.

 This court in In re Trusteeship Under Last Will of Ordean, 195 Minn. 120, 125, 261 N. W. 706, 708, laid down the general rule that:

"It is of course elementary that language free from doubt leaves no room for construction or interpretation. The 'cardinal rule of construction, to which all others must bend, is that the intention of the testator, as expressed in the language used in the will, shall prevail, if it is not inconsistent with the rules of law. * * * What is sought is not the meaning of the words alone, or the meaning of the writer alone, but the meaning of the words as used by the writer.' " See, 6 Dunnell, Dig. & Supp. § 10257, and cases therein cited.

[3] See, M. S. A. § 48.80, and cf. Mason St. 1927, § 7737.

In applying the foregoing principle, we must consider the pertinent trust provisions as a whole and not omit any material part thereof from consideration. 6 Dunnell, Dig. & Supp. § 10259. Furthermore, in determining the settlor's intent, as well as in applying the foregoing trust provisions to the subject matter, it seems best, as a matter of logical sequence, to consider initially the issue as to expenses which have heretofore been incurred by the trustee and for which it now for the first time seeks reimbursement, and, second, to consider the application to be given to the settlor's language with respect to any and all future expenses. Future expense items may pertain to services which in part at least are of a different nature from those involved in the administration of the trust for prior years. Furthermore, the right to reimbursement for past items of expense seems so clearly to have been waived and forfeited as to justify separate consideration. The desirability of this division in treatment becomes obvious when paragraph 22, with emphasis upon the italicized portion, is read.

The language of the settlor (from paragraph 22) that *"all expenses,* including the compensation of the Trustees, *shall be paid or provided for prior to any distribution* of income or principal * * * and *prior to the accumulation* and addition of income to the principal or body of the trust estate" (italics supplied), leaves no doubt as to the intent expressed. Neither interpretation nor construction is in order where language is used with such precision and clarity. Clearly, the settlor intended and specifically directed that in no event should income or principal be distributed and that in no event should income be accumulated to the principal unless and until "all expenses" had first been "paid or provided for." The use of the word "prior" admits of no other conclusion. The words "all expenses, including the compensation of the Trustees," necessarily embrace the salaries of Erickson and Faricy and also disbursements for office rent, light, general telephone service, stationery, and other items of expense. Not only does the language speak for itself, but to attribute any other intent to the settlor would be inconsistent with other portions of the trust instrument with respect to the specific provisions

made for the life beneficiary and the remaindermen. The failure to deduct all proper expenses, and particularly any postponement of payment of proper expenses or any withholding of charges of expenses for future accounting, would frustrate the intention of the settlor, would prevent the proper balancing and statement of accounts between life beneficiary and remaindermen, and would distort the true income of the beneficiaries and render inaccurate the statement of the remaining principal of the trust funds.[4]

■ Since the inception of the trust in 1920, detailed quarterly statements have been issued to the beneficiaries by the trustee, and these statements, which included summaries of all previous receipts and disbursements, showed regular deductions for trustee's fees at the specified rate of five percent of the gross income, together with deductions for taxes, safe-deposit rentals, and bond premiums. No mention or deduction was made for the salaries of Erickson and Faricy or for any office rentals. The record indicates that the entire income was *either distributed, or accumulated* and added to the trust principal, without paying or providing for the payment of any items not expressly included in the quarterly statements. No specific amount was ever set aside, by accounting segregation or otherwise, to indicate that any additional liabilities had been incurred or were ever contemplated for which payment should later be made. In the light of the express and unmistakable trust indenture provision requiring that "all expenses, including the compensation of the Trustees, shall be paid or provided for" *prior* to distribution of income and *prior* to the accumulation of any undistributed income to the trust principal, it follows that the trustee has waived and forfeited any right which it ever possessed to reimbursement for expense items heretofore incurred and for the payment of which the trustee made no provision. It is to be presumed, at least with respect to the plain and unambiguous trust indenture provisions, that a trustee in accepting a trust knows the limitations and conditions governing the administration of the trust estate. 54 Am. Jur.,

---

[4]In the absence of a special provision, a similar result would normally follow. See, 4 Bogert, Trusts and Trustees, § 805.

Trusts, § 307. In order to be entitled to reimbursement for administration expenses, the trustee must show substantial compliance with a plain provision requiring the trustee, *prior to the distribution or accumulation of income,* either to pay or make provision for the payment of such expenses.

■ Here we have not merely a failure to comply with the unambiguous terms of the trust, but also conduct on the part of the trustee, extending over a period of many years, to indicate that it never intended to make a claim for reimbursement for office rent, etc., and the Erickson and Faricy salaries. Failure to make a charge for these items for many years is in itself such conduct as constitutes evidence that the trustee did not expect repayment and thereby waived any right thereto. The situation is comparable to that of a trustee who fails over a period of years to seek or demand compensation for his services. See, In re Shailer Estate (1912), 172 Mich. 600, 138 N. W. 205; Spencer v. Spencer, 38 App. Div. 403; Wiener's Estate, 4 Pa. Dist. 422. No manifestation of an intent to seek reimbursement is in evidence. Restatement, Trusts, § 242, *comment j.*

■ Again returning to the elementary principle that language free from doubt leaves no room for construction or interpretation, we come to the problem of its application to the unitalicized portion of paragraph 22 of the trust indenture, which provides:

"The Trustees are hereby empowered to employ such clerks and other persons and to do and perform such acts and things as they may deem requisite for the proper and convenient execution of said trust, * * *."

It cannot be said that the plain and unambiguous import of the foregoing language justifies a conclusion that the settlor intended to vest in the trustee an arbitrary right to employ "such clerks and other persons" as it should deem requisite, proper, and convenient *without regard to the customary and well-recognized principles of trust estate administration.* Likewise, paragraph 12 in providing for the payment of general trust administration expenses creates no powers other than those usually conferred upon a trustee. The

settlor was an able and experienced business executive, well versed in established business practices. His language should not be given such a literal and narrow construction that the subject matter and purpose of his bounty are forgotten. His primary objective was to protect and benefit the cestuis, not the trustee. In vesting the trustee with a broad discretion, there is nothing to indicate that the settlor intended thereby to relieve the trustee of the normal duties and functions incident to that office and in consideration for which the usual compensation was to be paid. Taking these trust provisions as a whole and keeping in mind the purpose of the trust, it seems clear that the settlor intended thereby merely to give the trustee a wide discretion in the exercise of its authority to employ such persons as might be necessary or desirable for the advantageous execution of the trust, and that these provisions have no bearing on the determination of what services are properly chargeable to the estate as distinguished from the services to be rendered or furnished by the trustee in return for its compensation. The fact that the settlor named as trustee a trust company, which by the guidance of its officers has been so restricted in its operations as to have no business or income aside from that derived from the management of the trusts established by the settlor or the members of his family or that the ownership of the trust company's common stock has changed so as to be practically concentrated in a single stockholder is no justification for placing such trustee in a different compensation classification from that of other corporate or noncorporate trustees. Trusts are not established for the purpose of providing a trustee with its sole means of maintenance. The appointment of a trustee is merely incidental to the fundamental purpose of the trust, which is the protection of the *cestuis*. If the trustee cannot discharge his duties for the compensation specified by the settlor, he may, with the court's approval, resign in favor of a trustee capable of so doing,[5] or in lieu thereof make a clear and satisfactory showing to the court, with due notice to all interested parties, that the compensation for the work

[5]See, Minn. St. 1945 and M. S. A. § 501.42, and cf. Mason St. 1927, § 8104, governing the resignation of a trustee; Restatement, Trusts, § 106.

to be done is so inadequate that no other competent trustee can reasonably be expected to act on the terms established by the settlor. In a clear and proper case, no doubt, the court, in order to save the trust, may afford relief. See, 54 Am. Jur., Trusts, § 525; Annotation, 34 A. L. R. 918; Minn. St. 1945, §§ 48.80 and 501.42. Although a trustee who has not accepted the trust may disclaim his appointment, nevertheless, if the appointment is once accepted, he is under a duty to administer the trust even though the specified compensation is inadequate. Restatement, Trusts, §§ 102 and 169. In no event may the trustee increase his compensation by delegating to others, at the expense of the estate, the performance of duties for which he as trustee is receiving compensation. Trustees are not entitled to extra compensation for their usual and normal services or to reimbursement for expenditures made in employing others to perform such services. 2 Perry, Trusts and Trustees (7 ed.) § 911.

Restatement, Trusts, § 188, *comment c,* relating to the employment of agents, provides:

"The trustee can properly incur expenses in employing attorneys, brokers or other agents or servants so far as such employment is reasonably necessary in the administration of the trust. He cannot properly incur expenses, however, in employing agents to do acts which the trustee ought personally to perform, as where it would be an improper delegation of his duties or powers to act through an agent (see § 171), *or where although it would not be an improper delegation to employ an agent yet the service of the agent is one which is covered by the trustee's compensation."* (Italics supplied.)

What are the usual and normal services to be performed by a trustee in return for his compensation? All services involved in the exercise of his discretionary powers or duties in managing the trust and, in addition, certain ministerial duties, are covered by such compensation. Clearly, one of the ministerial duties which a trustee should perform in return for his specified remuneration is that involved in the routine chore of keeping accurate and

complete bookkeeping records and in preparing periodic adminis- tration accounts. 2 Perry, Trusts and Trustees (7 ed.) § 911.[6] In unusual and complicated cases, there may be both justification and need for the employment of specialized skill in the preparation of certain periodic accounts or in establishing a fundamental plan of bookkeeping. Whether the trustee is reasonably justified in retaining the services of an expert at the expense of the estate must be judged according to the test of reasonableness in the light of the peculiar circumstances of each case. The leading case is that of Hagedorn v. Arens, 106 N. J. Eq. 377, 383, 384, 150 A. 4, 8, where- in the court, in determining that the trustee was justified in em- ploying expert accountants for certain purposes by reason of the complicated situation involved, correctly stated the law as follows:

"It is true that under ordinary circumstances the commissions allowed to a trustee or other accountant are intended to cover the work and expense of keeping his books and preparing his account, and that payments made by the trustee to bookkeepers, accountants or lawyers for performing these services which the trustee is sup- posed to perform for himself, cannot be allowed as items of dis- charge in his account. * * * 'if the fiduciary chooses to employ others to do his work he must pay them himself.'

"What, however, is the fiduciary's work? Certainly work which is *beyond the ordinary or reasonably to be expected skill and ability of such a fiduciary*, cannot be deemed his work, and he will be en- titled to obtain the skilled services of experts where necessary or

---

[6]Our attention has been called to Leach v. Cowan, 125 Tenn. 182, 140 S. W. 1070, Ann. Cas. 1913C, 188. This case is not in point, in that the trustees therein named were not restricted to a specified rate of compensation fixed by the settlor, but were entitled to a *reasonable* compensation. The re- muneration allowed to the trustees was obviously fixed from the standpoint of what was *reasonable* for the services actually rendered with due regard to the fact that the bookkeeping duties had been performed by another. The only assignment of error was directed, not to the question of whether the compensation awarded was excessive, but to whether the trustees were entitled to *any* compensation, on the theory that the bookkeeper had per- formed all their duties.

advisable, and to have their compensation paid out of the estate; and indeed would probably be censurable, and perhaps personally liable, if he failed to do so.

\* \* \* \* \*

"There may be, therefore, I take it, matters involved in the computation and distribution of income and capital by trustees and in the statement and rendering of their accounts, *in unusual and complicated cases,* which are beyond the reasonable expectation of the skill and ability of the ordinary fiduciary, in which his employment of an expert—a combination of lawyer and accountant trained in such matters—will be not only justifiable but commendable and even necessary, and for whose compensation allowance may, and should, be made from the estate.

"\* \* \* The complicated work, the legal questions involved, the necessity for skilled knowledge in the matters of apportionment of dividends between capital and income, of apportionment of subsequent earnings or dividends in stock acquired through stock dividends, of making proper income tax returns and payments, and apportioning the same, and the like, all indicate the reasonableness and the propriety of having these things done or supervised by persons skilled along those lines, and that the skill and ability to do these things properly and for the best interests of the estate is not reasonably to be expected of the fiduciary himself.

\* \* \* \* \*

"Each case obviously must depend on its own circumstances; and the test must be that of reasonableness." (Italics supplied.)

In the application of these principles to the instant case (having in mind that the trustee may not be reimbursed for any unpaid expense items, regardless of their nature, which were heretofore incurred and for the payment of which no provision was made *prior* to the distribution of income and *prior* to the accumulation of undistributed income to the trust principal), we find no error in the trial court's determination that the services of Erickson and Faricy, as illustrated by their past employment activities as revealed by

the record herein, are not chargeable to the estate. At best, such services have been merely of a ministerial nature and confined to such ministerial duties as are usually rendered by a trustee in return for his compensation. In so holding, we are not precluding the trustee here from showing, in connection with future trust activities and expenditures, that these employes or other persons may not be possessed of certain specialized skills and abilities which, under certain unusual circumstances and for certain limited purposes, may be justifiably employed by the trustee at the expense of the estate in accordance with the principles herein expressed.

We are further of the opinion that the evidence presented to the court sustains its findings that the expenditures for rent, light, general telephone service, and stationery, under the present circumstances, are properly to be allocated to the general operation of the business of the trustee as a trust company and are not chargeable against the trust estates involved herein.

■ We find no merit in the trustee's contention that the trial court went beyond its jurisdiction in adjudicating certain items of expense in connection with its interpretation of certain trust provisions and in its instruction to the trustee as to their meaning and application. The trustee's petition to the trial court contained a detailed prayer for relief which specifically called not only for answers to abstract questions of legal construction, but for an actual adjudication of specific items of expense whereby such items were to be allowed or disallowed. Evidence in accordance with the prayer for relief was submitted to the court for its consideration. The interested parties were before the court. Under the circumstances, we find no error, but we observe that it would have been better practice to have submitted to the court a complete account in connection with the request for the adjudication of specified items of disbursement. The trial court would have been justified in refusing to proceed with such adjudication in the absence of a complete accounting.

The order of the trial court is affirmed as herein modified. Affirmed as modified.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am unable to concur in the opinion of the majority. At present, the trust company acts as trustee for three remaining trusts originally created by Walter Butler and described in the title of these proceedings and for three small additional trusts established by the beneficiaries of one of such trusts. It conducts no public trust business, acts as trustee for no other trusts, and has no source of revenue other than the compensation it receives as trustee of these six trusts and from the investment of its original capital of $200,000.

Since 1929, the trustee has retained two employes—Einar Erickson and James R. Faricy—the former to keep the books of account of such trusts, and the latter to investigate and report on various securities proposed as investments for their trust funds. According to undisputed testimony, their work is purely ministerial, any work involving the exercise of judgment or discretion being performed by Robert Butler as president. Each year the trustee has paid the salaries of these employes and has also expended various sums for office rent, premiums on bonds, rental of safe-deposit boxes, attorneys' fees, and like items, all for the sole benefit of the remaining Walter Butler trusts and the three small additional trusts described. At no time has the trustee had its accounts approved or allowed by the district court, but it has submitted quarterly statements to each of the beneficiaries of the trusts. Therein no deduction has been taken for any of the aforesaid expenditures.

We are concerned with two clauses common to all the trust agreements, which read as follows:

"12. *Expenses—Trustees' compensation.*

"There shall be paid out of and deducted from the gross income all expenses incurred in the administration and protection of the trust estate, all taxes, and the compensation of the Trustees. The Trustee or Trustees shall have a right to receive compensation for their services, to be determined by the Trustee or Trustees, but the

aggregate of such compensation shall not exceed five per cent (5%) of the gross income of the trust estate, and the amount paid to the Trustee or Trustees as such compensation at the time of the distribution of the principal of the trust estate or any part thereof shall not exceed three per cent (3%) of the amount of the principal distributed."

"22. *Offices, Clerks, Etc.*

"The Trustees are hereby empowered to employ such clerks and other persons and to do and perform such acts and things as they may deem requisite for the proper and convenient execution of said trust, and all expenses, including the compensation of the Trustees, shall be paid or provided for prior to any distribution of income or principal to the beneficiaries in this instrument designated and prior to the accumulation and addition of income to the principal or body of the trust estate."

The trustee, for the most part, has deducted its compensation as specified in paragraph 12 above quoted, but, as previously indicated, has received no reimbursement for clerical expenses, office rent, and like items. It is its contention that said paragraphs should be construed to authorize it to receive reimbursement for such items in addition to its regular compensation from the income of said trusts. Objectors contend that such expenses should not be charged to income, but should be paid for by the trustee out of its compensation for fees, or from its other revenue, which, as above stated, is limited to money derived from the investment of its original $200,000 capital.

Both the trustee and objectors assert that the provisions of these paragraphs were given practical constructions in support of their present respective contentions by the trustor during his lifetime, as well as by other beneficiaries of said trusts. On one occasion it appears that Walter, the trustor, while president, approved and acquiesced in the reimbursement of a stockholder of Butler Bros. Mining Company, a separate corporation, for expenditures made by the latter for clerical work furnished the trustee, and thereafter prorated charges therefor to the various trusts; thereby indicating,

the trustee argues, that he intended that such expenditures should be charged against the individual trusts. On the other hand, objectors contend that because the trustor, during his lifetime and while in control of the trustee, made no charge for such expenses against the individual trusts except on the one occasion described, he thereby clearly manifested his intention that such items were *not* to be charged against the individual trusts.

By virtue of the terms of the trust agreements, a large part of the income of the three trusts described in the title of these proceedings has accumulated each year for the benefit of the residuary beneficiaries. At present, approximately $600,000 of such income has been thus retained in each of such three trusts. The principal of each now exceeds $1,000,000. The items of expense sought to be charged against all the accumulated income now total in all approximately $100,000 for the entire period. It is not disputed that in 1944 such expenses exceeded the trustee's authorized compensation; that this condition may continue in the future; and that, in consequence, the trustee may suffer a yearly loss if it is not authorized to receive reimbursement for such expenses.

At the hearing the trial court heard testimony of Einar Erickson, one of said employes, and considered the financial statements of the various trusts. Erickson's testimony, which was undisputed, was to the effect that the expenditures described were for the sole benefit of the trusts now operated by the trustee and for no other purpose.

1. Paragraphs 12 and 22 of the trust agreements hereinbefore set forth appear to be entirely free from ambiguity. They are not inconsistent with Minn. St. 1945, § 48.80, which authorizes trust companies to charge reasonable compensation in addition to all necessary expenses with legal interest thereon. They specifically authorize and direct the trustee to receive reimbursement for all expenses incurred in the administration of the trust in addition to its compensation. Clerical hire is *specifically* authorized in paragraph 22. The term "offices" set forth in the title of this paragraph leads to the reasonable conclusion that if office space is

"requisite for the proper and convenient execution of said trust" reimbursement shall be made for reasonable sums expended therefor. The provision that *"all expenses, including the compensation of the Trustees,* shall be paid or provided for prior to any distribution of income" (italics supplied), immediately following the clause detailing the trustee's right to employ clerks and perform other requisite acts, clearly manifests the trustor's intention that the trustee shall receive reimbursement for such items of expense *in addition* to its compensation. In paragraph 12, the trustee's compensation is fixed at five percent of the gross income of the trusts and three percent of the principal upon final distribution. Nowhere do the trust agreements require the trustee to pay such expenses from its fees for compensation. To so hold is to distort the plain meaning of the words used.

2. The trustee, so far as the record before us indicates, although qualified to engage in a general trust business, actually limits its activities to the handling of the six trusts above described. It does not act as trustee for other trusts; it does not receive money, stocks, or securities of private individuals or corporations for deposit; it does not act as agent for others in the investment of funds or the handling of property; it does not engage in the business of buying and selling securities, bonds, or insurance; it has no source of revenue other than the amounts it receives as fees from the individual trusts and from the investment of its capital. If it is denied the right to reimburse itself from the trusts for these necessary expenditures, presumably it must operate at a loss or withdraw completely as trustee.

No authorities have been submitted to indicate that in a situation such as here presented, where a trustee is engaged solely in the business of acting as trustee for certain specified trusts and making expenditures in connection therewith for clerical help, office rent, and like items, it must pay for the same from its fees or compensation, particularly where the terms of the trust agreement otherwise provide. In Leach v. Cowan, 125 Tenn. 182, 140 S. W. 1070, Ann. Cas. 1913C, 188, where a testamentary trust contained no language

whatsoever with reference either to fees or expenses and where it was contended that payment of expenses for necessary clerical hire and attorneys' fees eliminated the trustees' compensation, the court, in allowing the trustees compensation in addition to their expenses, stated (125 Tenn. 201, 140 S. W. 1075, Ann. Cas. 1913C, 188):

"The assignment of error does not make the point that the compensation allowed was excessive, but does insist that the executors and trustees were not entitled to any compensation at all, because they performed no duties as executors and trustees, but that all of these duties were performed by the bookkeeper, whom they selected, * * * and * * * their attorney, * * *. They [bookkeeper, attorney, and trustees] show that the executors and trustees were diligent and careful in the discharge of their duties, and left nothing to the attorney, except what is usually left to attorneys under such circumstances, and that the bookkeeper did only clerical work. The responsibility and burden of the management of the estates rested upon the executors and trustees, upon whom it had been devolved by the will, and they have given careful, diligent, and intelligent attention to these interests ever since they were appointed."

A similar doctrine was expressed in Hagedorn v. Arens, 106 N. J. Eq. 377, 383, 384, 150 A. 4, 8, as follows:

"What, however, is the fiduciary's work? Certainly work which is beyond the ordinary or reasonably to be expected skill and ability of such a fiduciary, cannot be deemed his work, and he will be entitled to obtain the skilled services of experts where necessary or advisable, and to have their compensation paid out of the estate; * * *

\* \* \* \* \*

"There may be, therefore, I take it, matters involved in the computation and distribution of income and capital by trustees and in the statement and rendering of their accounts, in unusual and complicated cases, which are beyond the reasonable expectation of the skill and ability of the ordinary fiduciary, in which his employment of an expert—a combination of lawyer and accountant trained in such matters—will be not only justifiable but commendable and even

necessary, and for whose compensation allowance may, and should, be made from the estate.

\* \* \* \* \*

"Each case obviously must depend on its own circumstances; and the test must be that of reasonableness. In the present instance the reasonableness of the expenditure and the propriety of allowing it as a charge against the estate, seem beyond question, \* \* \*."

In the Hagedorn case, the trust agreements involved did not contain the specific instructions present in the instant case, nor were the statutory regulations so definite on the subject as is the Minnesota statute above referred to (§ 48.80). The plain language of the trust instruments here, as well as the definite authorization set forth in the above statute, clearly establishes the trustee's right to receive, in addition to its regular compensation, reimbursement for expenditures made solely and necessarily for the trusts involved, and to prorate the charges therefor against the trusts for which expenditures were made.

3. Since such language of the trust instruments is free from ambiguity, there is no need to resort to extrinsic evidence or to consider the practical construction placed upon it by the trustor in connection with the quarterly reports at a time when he was in control of the corporate trustee. See, Towle v. First Trust Co. 194 Minn. 520, 522, 261 N. W. 5, 7.

4. There is a sharp distinction, of course, between the situation here and one involving a public trust company conducting a general trust business, with sources of revenue not only from its many trusts, but from other undertakings as well, and maintaining office space and clerical help in connection with all its various enterprises. Expenditures for clerical help and office rent under such circumstances would appear to relate to the general business of such companies and hence to be chargeable to their general revenue. Such companies are in a position to furnish such services with greater facility and less expense than an ordinary individual trustee or a corporate trustee limiting its activities to a few specified trusts and conducting no

general business. This rule is expressed in Hagedorn v. Arens, 106 N. J. Eq. 383, 150 A. 8, *supra,* as follows:

"It is true that under ordinary circumstances the commissions allowed to a trustee or other accountant are intended to cover the work and expense of keeping his books and preparing his account, and that payments made by the trustee to bookkeepers, accountants or lawyers for performing these services which the trustee is supposed to perform for himself, cannot be allowed as items of discharge in his account."

5. Here, at the proper time, of course, the trustee should have the burden of establishing that the expenditures in question were reasonable and necessary because of the heavy responsibility and numerous complications involved relative to these large trusts, and ordinarily this question should be determined at the time the trustee submits its accounts for approval by the court. Up to the present time this has not been done. Apparently, neither the trustee nor objectors intended to present evidence relative to such expenditures, the necessity and reasonableness thereof, or other details relative thereto. Some testimony was taken on this issue, but it was limited to rather general statements and conclusions, and no accounts were submitted for allowance.

The court, however, not only construed the paragraphs, but determined finally that expenditures for clerical help and office rent were not peculiar to the trusts and not properly chargeable to them. Its determination in this respect was directly contrary to such evidence as was submitted. When the trustee's annual or final accounts are presented for allowance, both parties here should have full opportunity to submit material evidence in support of their respective contentions. The trustee, on the one hand, should have the right to establish that the items charged are true and correct, that the services for which the charges were made were reasonable and necessary and were limited to the trusts involved, and other like issues customarily present when a trustee's account is presented for allowance. Objectors should have a like opportunity to submit evidence

establishing that the services were unreasonable and unnecessary, or that they were not limited to the trusts involved, but extended to other business undertakings of the trustee, or that the trustee had waived or lost its right to reimbursement therefor.

6. It has been urged that because the trustee did not deduct such expenditures from the income already distributed it thereby waived its right to the same insofar as past distributions are concerned. This issue was not presented by the pleadings, nor tried by consent, nor determined by the trial court's order. It appears for the first time here. As previously stated, a substantial portion of the *income* of the trusts has been accumulating for a number of years. The present beneficiaries will be entitled not only to future income, but, under the terms of the agreements, to *substantial portions of the accumulated income as well.* The rules of law applicable in such a situation are set forth in Restatement, Trusts, § 242, *comment j,* as follows:

"Thus, if the trustee pays income to the beneficiary entitled to income without deducting the compensation to which he is entitled with respect to such income, *manifesting an intention to make no claim to compensation,* he cannot require the beneficiary to pay him such compensation nor is he entitled to such compensation out of income subsequently accruing. He is entitled, however, to compensation with respect to income thereafter accruing.

"If the trustee pays over income without deducting the compensation to which he is entitled with respect to such income, *but without manifesting an intention to forego his claim to compensation* with respect to such income, he can deduct such compensation out of any further income or any principal payable to the same beneficiary, unless the beneficiary has so changed his position as a result of receiving the full amount of income that it would be inequitable to allow the trustee to make such deduction." (Italics supplied.)

While the foregoing sections refer to *compensation* of trustees, a similar rule would appear to be applicable to claims for *reimbursement for expenditures.* Thereunder, if it appears that the trustee

has not manifested an intention to forego claims for necessary expenditures, it should be permitted to deduct the same out of accumulated income, future income, or principal, as the evidence justifies. There is no evidence in the record that the trustee has manifested any intention to forego claims for the expenditures above described.

Of course, such trusts as have been previously terminated and closed are now free of these charges, and the remaining trusts should not be required to bear the burden which should have been charged to them.

MR. JUSTICE FRANK T. GALLAGHER, not having been a member of the court at the time of the argument, took no part in the consideration or decision of this case.

