IN RE TRUST CREATED BY WILL OF WILSON G. CROSBY. THOMAS C. CROSBY AND ANOTHER v. GEORGE W. ATMORE AND ANOTHER.[1]

June 20, 1947.

No. 34,332.

[1]Reported in 28 N. W. (2d) 175.

*Wellington J. Brown* and *W. O. Bissonett,* for appellants.

*Gillette, Nye, Harries, Montague, Sullivan & Atmore,* for respondent George W. Atmore as guardian *ad litem* of Wilson G. and Carolyn Ruann Crosby.

JULIUS J. OLSON, JUSTICE.

This litigation arose out of certain proceedings commenced by Thomas C. and Wilson S. Crosby, beneficiaries under the will of their father, Wilson G. Crosby, and the trust created thereby, wherein they petitioned the trial court to determine that under its terms they were entitled to receive the net rents and profits from the lands left by their father during the time required to probate his estate; that the First & American National Bank of Duluth is the trustee of decedent's property; that as such it has received from the representative of such estate the mentioned rents and profits, exceeding $72,000 in

amount; and that this sum be declared to be their property and the trustee be directed to pay the same to them.

George W. Atmore was appointed guardian *ad litem* for the grandchildren, Wilson G. Crosby II and his sister, Carolyn Ruann Crosby, minor children of petitioner Thomas C. Crosby. On October 29, 1945, and during the pendency of these proceedings, petitioner Wilson S. Crosby died, and Wellington J. Brown, the representative of his estate, was substituted in his stead.

Testator's will was executed November 22, 1929. Such proceedings were thereafter duly had that a final decree was entered June 20, 1945. During the period of probating the estate, each son was paid $11,500 as maintenance by the representative of the estate. All net proceeds from the rents and profits of testator's land were included by the representative in the final account to the probate court and duly allowed by it. The money thus received, with other funds, was decreed by the probate court to the trustee. During the period between testator's death on September 27, 1942, and the termination of the probate of his estate, the income from rents and profits of the lands owned by testator at the time of his death amounted to $72,365.59. The facts recited are not in dispute.

A careful reading of the will demonstrates that testator was a careful and thoroughly capable lawyer. He was also possessed of many years' business experience and had accumulated a large amount of property. Naturally and properly, the immediate objects of his bounty were, first of all, his wife and, next, his two sons. Only the sons survived him. Important in this case are the third and seventh articles. Article Third, paragraph 1, provides:

"All the residue of my estate (which, together with any property acquired by the trustees hereunder, is hereinafter referred to as the trust estate) I give, devise and bequeath to the trustees hereinafter named, and to their successor or successors, in trust, however, with the powers and for the purposes hereinafter set forth."

Paragraph 3(a) thereof, which has an important bearing upon one phase presented here, provides:

"The trustees shall pay to each of my said sons the sum of Three Thousand Dollars ($3,000) in each year in monthly installments as nearly equal as may be. * * * If, however, either or both of my said sons shall indulge in intoxicating drinks in any quantity whatsoever, then, so long as such indulgence shall continue and for six months thereafter, the trustees shall make payments to such sons" at a much lower specified rate.

Under the trust, the trustees were given broad grants of power in the handling of testator's property. There are no limitations therein provided for involved in this litigation. It is sufficient for our purpose to quote the following portions under the third article. Paragraph 3(d) of Article Third provides:

"After making the payments required by the foregoing provisions of this will, the trustees shall pay to my wife, LaBurtte S. Crosby, the net rents and profits from all the lands held by the trustees which may not be required to make the payments provided for in the foregoing provisions of this Section 3. Such payments shall be made to her annually (or oftener as the trustees may from time to time think proper) as soon as the trustees can determine the amount by which the rents and profits of such lands for any year shall exceed the amounts, if any, to be paid from the rents and profits pursuant to the preceding provisions of this Section 3. Such payments of rents and profits to my wife shall continue so long as she shall live. After her death such payments shall be made in equal shares to my sons or to the issue of any deceased son, the issue in all cases taking by right of representation the share such deceased son would take if living. * * *"

Paragraph 4(c) thereof provides:

"If, at the termination of the trust, there shall be no living issue of one son, the issue of the other son shall receive the entire amount of the trust estate."

Paragraph 4(d) thereof provides:

"If at the termination of the trust there shall be no living issue

of either of my sons, then the entire estate shall pass to Brown University, of which I am a graduate in the class of 1883."

Article Seventh provides:

"During the time consumed in the probate of my estate, the executors shall pay to my wife the sum of Three Thousand Dollars ($3,000.00) yearly in monthly installments of Two Hundred Fifty Dollars ($250.00) each, and to each of my sons, or to the widow or lawful issue of any deceased son, as the case may be, the sums which the trustees are, under like circumstances, directed to pay to such son, widow or lawful issue."

As stated, testator died September 27, 1942. Although his wife predeceased him by nearly 20 months, he made no change in any of the provisions of his will.

As the basis for reversal here, petitioners contend:

"It is the claim of the petitioners that they were entitled under the law to receive payment of the net rents and profits of the lands included in the estate of Wilson G. Crosby, deceased, during the period of the probate thereof, or from September 27, 1942 to July 3, 1945."

It should be noted that the final decree was entered by the probate court on June 20, 1945, but "the probating of testator's estate terminated July 3, 1945."

Upon the recited facts, the trial court concluded as follows:

"THE COURT HEREBY CONSTRUES AND INTERPRETS the last will and testament of said Wilson G. Crosby, deceased, as not providing for the payment to said Wilson S. Crosby and Thomas C. Crosby of the rents and royalties of the lands included in said estate received by the representative of said estate during the period of the probate thereof other than was paid to them as maintenance under the order of said probate court.

"IT IS THEREFORE ORDERED:

"1. That petitioners' request for an order requiring the First & American National Bank of Duluth to immediately make an account-

ing setting forth all funds which have come into its possession as such trustee be denied.

"2.   That petitioners' request for an order requiring said trustee to make payment to petitioners forthwith of such amount as the court may find petitioners are entitled to receive as the net rents and profits accumulated since September 27, 1942, the date of death of said Wilson G. Crosby, be denied."

It is from this order that petitioners have appealed.

■   Neither counsel nor the trial court were at odds as to the legal principles involved. In re Trust Under Will of Koffend, 218 Minn. 206, 221, 15 N. W. (2d) 590, 598, was especially relied upon by petitioners, and neither the court nor respondents have questioned its authority. In that case the court said:

"* * * Absent expression of a contrary intention, the beneficiary of the income from a fund or property bequeathed or devised in trust is entitled to it from the date of the testator's death."

Petitioners' arguments and contentions in the court below were twofold. In the first place, they asserted that they were entitled to the mentioned rents and profits because testator's intent, in the language of the will, left no indication of a contrary purpose or intent. The trial court, however, was of the view that Article Seventh "does indicate a contrary intent," since it makes "a specifically different provision" operative "during the time consumed in the probate of the estate, in that the executors were directed to pay during that time $3,000.00 yearly to the testator's wife and to each of the sons" the same amount "under like circumstances." "This," said the court, "clearly indicates * * * that the income which was to be paid to them by the trustee was not to be paid to them during the period of probate." In the second place, petitioners claimed that, since under Article Third the sons were to be paid by the trustee all the net income after their mother's death and since she died before her husband, the whole net income should be given them under the provisions of Article Seventh even during the time of probate. But this

contention was not deemed "susceptible to this construction" by the court, because—

"* * * The provisions for the sons in Article Seven were made in contemplation of the payment of $3,000.00 annually to the testator's wife. Under the trust provisions the widow was to receive all the net income from realty after payment of the specified amounts to the sons or their widows or issue. It does not seem reasonable to hold that the testator intended that if his wife predeceased him the sons would· be paid more during the period of probate than would have been paid to her had she survived him."

■ One of our highest duties is to give effect to a testator's intentions, and in so doing we are required to consider his "dominant intention," which is "to be gathered from the instrument as a whole," and not by isolated words alone. "And we are required to place a reasonable and sensible construction upon the language used." In re Trusteeship Under Will of Ordean, 195 Minn. 120, 125, 261 N. W. 706, 708, 709. And so in In re Trusts Created by Butler, 223 Minn. 196, 201, 26 N. W. (2d) 204, 208, where we said and held:

"* * * The 'cardinal rule of construction, to which all others must bend, is that the intention of the testator, as expressed in the language used in the will, shall prevail, if it is not inconsistent with the rules of law. * * *' "

■ In In re Estate of Boutelle, 218 Minn. 158, 162, 15 N. W. (2d) 506, 508, we quoted with approval from In re Estate of Barrett, 141 Misc. 637, 638, 253 N. Y. S. 658, 660, as follows:

"* * * In examining that language [used by testator] we must take into consideration the fact that it was drawn by an experienced lawyer and must give to the words used their usual and accepted meanings without enlargement and without restriction * * * and when particular or technical terms are used particular or technical interpretation or construction follows as of course in the absence of all clear intent to the contrary. * * * We must also keep in mind that no words used by the testator should be cast aside as

meaningless, but that effect must be given if possible to every word and provision."

■ We have recited the facts, and these are not in dispute. The cases cited (and many more could be cited) sustain the conclusions reached by the trial court. Petitioners are not in a position to complain, since their father's will expressly provided that "During the time consumed in the probate of my estate" they were to be paid a specified sum, and no more. These payments have been fully met by the executors of testator's estate. Since that is the only question before us, further discussion is needless. Without hesitancy we affirm the order.

Affirmed.

MR. CHIEF JUSTICE LORING took no part in the consideration or decision of this case.