260 Minn. 550 (1961)
110 N.W. (2d) 873
IN RE TRUST CREATED BY WALTER BUTLER WITH BUILDERS TRUST COMPANY AS TRUSTEE, DESIGNATED AS HELEN W. BUTLER TRUST.
MIDLAND NATIONAL BANK OF MINNEAPOLIS AND OTHERS
v.
EFFIE BUTLER O'CONNOR AND OTHERS.
No. 38,077.
Supreme Court of Minnesota.
August 25, 1961.
*551 Robert O. Sullivan, for appellant Midland National Bank.
D.D. Wozniak, for individual appellants and Builders & Associates, Inc.
Hoke & Lindgren, for respondents, beneficiaries and trustee of other trusts created by same indenture.
THOMAS GALLAGHER, JUSTICE.
This appeal involves construction of certain provisions in a trust inter vivos created by Walter Butler on June 18, 1920,[1] for the benefit *552 of Helen W. Butler, his wife. In other trusts created at the same time, Walter P. Butler, Effie Butler O'Connor, and Robert Butler, children of the trustor, were named as the respective beneficiaries. For convenience each of such trusts will be designated by the name of its beneficiary.
Builders Trust Company of St. Paul, named as trustee in each of the trusts, acted in that capacity in the Helen W. Butler trust until May 13, 1954. On that date it resigned as trustee in both the Helen W. Butler trust and the Walter P. Butler trust, and upon its motion, Midland National Bank, hereafter referred to as Midland, was confirmed as successor trustee in both of these trusts. In the Effie Butler O'Connor trust, Builders Trust Company resigned as trustee on January 22, 1952, and was succeeded by Anglo-California National Bank of San Francisco, now Crocker-Anglo National Bank. In the Robert Butler trust, Builders Trust Company resigned as trustee on September 23, 1952, and was succeeded as trustee by Builders Butler Company. Robert Butler died September 15, 1955, and thereafter the trust for his benefit was terminated and its assets distributed to his lineal descendants.
Helen W. Butler died on April 28, 1959. In the present proceedings we are concerned with her trust. The trust agreement therein provided as follows:
"Upon the death of said Helen W. Butler all of the property then in the trust estate shall be assigned to and divided equally among such of the trusts respectively designated as the `John E. Butler Trust', the `Walter P. Butler Trust', the `Effie Butler O'Connor Trust' and the `Robert Butler Trust', specified in the four trust agreements between said Walter Butler, Trustor, and said Builders Trust Company, Trustee, * * *.

* * * * *
"There shall be paid out of * * * gross income all expenses incurred in the administration * * * of the trust estate, all taxes, and the compensation of the Trustees. * * * the aggregate of such compensation shall not exceed five per cent (5%) of the gross income of the trust estate, and the amount paid to the Trustee * * * as such *553 compensation at the time of the distribution of the principal of the trust estate * * * shall not exceed three per cent (3%) of the * * * principal distributed."
Prior to February 19, 1954, all stock of Builders Trust Company had been acquired by Robert Butler. The latter also owned all stock in the Builders & Associates, Inc. On that date Builders Trust Company petitioned the District Court of Ramsey County for authority to resign as trustee in the Helen W. Butler trust and to have Midland confirmed as its successor trustee. It then sought an order allowing it the distribution fee payable upon termination of the trust as above set forth. Helen W. Butler, through her attorney, then interposed an answer, objecting thereto as follows:
"* * * Alleges that there is no provision under said Helen W. Butler trust for any fee being paid to the Builders Trust Company or any co-trustee in the event that said corporate trustee or co-trustee see fit to exercise the right of resignation conferred by said Article 8 of the trust and that the pending petition is not a proper exercise of the right of resignation conferred upon said Builders Trust Company under said Article 8 in that the resignation of said Builders Trust Company permitted by said Article 8 must be an unconditional resignation and the resignation tendered by the petition of February the 19th, 1954 of the Builders Trust Company is a conditional resignation only and one not permitted by the terms of said Article 8."
Article 8 of the trust agreement empowered the directors of Builders Trust Company to appoint its successor as trustee within 30 days after its resignation. On May 13, 1954, Builders Trust Company amended the petition and deleted therefrom the request for a distribution fee and resigned. At that time it had been advised by its counsel that the distribution fee was payable only upon final distribution of the principal of the trust to the beneficiaries named therein. Builders Trust Company at that time agreed that Midland be appointed as its successor trustee after it had entered into an agreement with Midland that when the trust was finally terminated any distribution fee allowed Midland by the court would be payable by Midland to Builders Trust Company because of the latter's 34 years' service as trustee and its *554 position that it had not received full compensation therefor during its administration of the trust. This agreement dated April 15, 1954, provided:
"WHEREAS, Article 8 of the trust indenture permits [Builders Trust] Company as trustee thereof to resign at any time, and
"WHEREAS, Company is about to resign as trustee of said trust and is willing and desirous of nominating and appointing [Midland] Bank as its successor trustee, and

* * * * *
"WHEREAS, Bank is willing and desirous of acting as successor trustee of the said trust upon the terms, conditions and provisions hereinafter set forth.
"NOW, THEREFORE, it is agreed between the said parties as follows:

* * * * *
"Subject to the approval of the District Court of Ramsey County, Minnesota, of the resignation of Company as trustee of the aforesaid trust and to the confirmation of the appointment by Company of Bank as successor trustee of said trust, Bank [sic] agrees to nominate and appoint Bank as its successor trustee * * *.
"* * * Bank agrees that its full compensation as such successor trustee to Company shall be limited to the annual fee specified in Article 9 of the said trust indenture and that it shall at no time be entitled to retain any part of the termination fee which may be paid to it as the then acting trustee upon the termination of the trust. Bank agrees that any termination fee paid to it upon the termination of the aforesaid trust shall immediately, upon receipt by Bank, be paid over to Company * * *."
At the time of the foregoing controversy and the agreement referred to, Mr. Robert Sullivan, who presently represents Midland in these proceedings, was attorney for Helen W. Butler, as beneficiary of the trust, and there was testimony, not disputed, that he was aware then that the agreement had been made.
Testimony was submitted that in connection with the preparation of the final account and distribution of the assets of the trust to the *555 beneficiaries, Midland was required to expend additional services therefor for which it sought a fee separate from the distribution fee referred to in the sum of approximately $6,000. A trust officer of Midland testified that this fee was "for the services which we have rendered in the administration and protection of the trust estate and preparation for distribution," which required some 30 to 40 employee days. It was conceded that Midland had been paid the regular annual compensation fee of 5 percent of gross income from April 15, 1954, up to April 28, 1959, on which date the trust terminated; and that any distribution fee due under article 9 would be payable by Midland to Builders Trust Company under the April 15, 1954, agreement.
Evidence was submitted that in the Helen W. Butler trust the gross income for all the years from its inception in 1920 up to April 15, 1954, inclusive, when Builders Trust Company resigned, totaled $967,461; that Builders Trust Company had charged and been paid annual trustee's fees for administration of the trust during such years the total sum of $29,460.04, or $19,363.01 less than the maximum 5 percent provided for in article 9; and that if the maximum 3-percent distribution fee authorized under article 9 were allowed upon $611,305.15, the principal amount of the trust available for distribution at the date of hearing, such fee would equal $18,399.15.
The evidence established that when the assets of the Effie Butler O'Connor trust were transferred by Builders Trust Company to the Anglo-California National Bank of San Francisco (now Crocker-Anglo National Bank) in 1954, an agreement between them was made and filed in the trust file in the office of the clerk of the District Court of Ramsey County under which the 3-percent distribution fee became payable to Builders Trust Company; that such fee was paid to Builders Trust Company in annual installments, the last of which was made in April 1959; and that such agreement was made and carried out without objection from the beneficiaries in the Effie Butler O'Connor estate, notwithstanding that this trust has not yet terminated. Likewise, testimony was received that when the Robert Butler trust was terminated the full 3-percent distribution fee therein was paid to Builders Butler Company as successor trustee and that payment of such fee was upon approval of the District Court of Ramsey County.
*556 The agreement of April 15, 1954, provided that any distribution fee which may be paid to Midland as the then acting trustee upon termination of the trust shall immediately upon its receipt by Midland be paid over to Builders Trust Company. It was conceded that Builders Trust Company at no time intended or consented to any waiver of its right to this distribution fee. A trust officer of Midland testified that officers of Midland had concluded that since Builders Trust Company had administered the trust for some 34 years and since, because of the age of Helen W. Butler at that time, the trust would terminate within a few years, it would only be fair to have such fee payable to Builders Trust Company who would have performed the greatest amount of work involved.
Subsequent to this court's decision in In re Trusts Created by Butler, supra, Builders Trust Company included the following reservation in all of its annual accounts:
"The trustee reserves all claims of the trustee to deductions on account of the trustee's administration expenses and compensation for services from and after the inception of the trust. The foregoing statement includes computations based on only partial deductions on account of trustee's administration expenses and compensation and shall in no manner prejudice any right of the trustee to deduct, from the trust estate or gross income of the same, the full amount of all unpaid items of such administration expenses and compensation incurred and earned, respectively, by the trustee from and after the inception of the trust."
The trial court determined:
(1) That Midland be paid $6,000 from trust income as additional fees for unusual and extraordinary services beyond those referred to in article 9 of the trust;
(2) That Builders Trust Company waived its right to a distribution fee when it withdrew its request therefor upon challenge of Helen W. Butler and unconditionally resigned as trustee on May 13, 1954;
(3) That by the written agreement of April 15, 1954, Midland expressly waived its right to termination fee provided for in article 9 of the trust and agreed that its full compensation would be the annual *557 fee based upon and payable from gross income as specified in article 12;
(4) That postponement of the claim for payment of termination fees herein would render accounting inaccurate and would defeat the intent of the original settlor;
(5) That the agreement dated April 15, 1954, was made without the knowledge or consent of the presently objecting beneficiaries and is against public policy and nonenforceable against them in so far as it relates to payment of the distribution fee by Midland to Builders Trust Company or its successor.
In a memorandum attached to its findings, the court stated:
"* * * disharmony [between the various beneficiaries of the Walter Butler trusts] has continued * * * and has caused much animosity, expense and inconvenience * * *.
"If the present trustee be directed, over the objection of two-thirds of the beneficiaries, to pay three per cent or approximately $18,000.00 to the assignee of the original trustee, both of which corporations * * * were owned and operated * * * by Robert Butler, the result will be that 1980/2000 thereof will go to his widow. * * *
"* * * We are not concerned here with normal administration by an ordinary corporate trustee * * * none of whose officers or shareholders have any personal or beneficial interest in the trust assets. * * *
"* * * Expenses of administering this trust, including all clerical help, etc., were not charged against it and were borne by him [Robert Butler] or his other companies with no disclosure of expectation of reimbursement until the 1945 application therefor which was denied by this court * * *. The 1920 indenture * * * cannot be construed to show any expectation by the settlor of ownership of the trustee by only one person nor of an assignment of its assets including a claim for compensation payable in the future to a corporation entirely owned by that person. In 1954 the original trustee resigned, assigned all its assets to Builders and Associates, Inc., which was created, owned and operated by Robert Butler; and the corporate existence of the original trustee was terminated. The resignation of, assignment by, and termination *558 of the corporate existence of the original trustee, and the creation of the assignee were produced by him * * * primarily, and undoubtedly solely, for his own benefit or for that of companies owned or controlled by him or for both.
"* * * my opinion is that the present trustee may not lawfully pay the assignee's demand nor any part thereof."
Subsequent motions by Midland, together with the remaindermen of the Robert Butler trust and the successor of Builders Trust Company, for amended findings were denied. On appeal they assert that the trial court erred (1) in holding that Midland had waived its right to a distribution fee by virtue of the April 15, 1954, agreement; (2) in holding that Builders Trust Company had waived its right to a distribution fee when it resigned unconditionally as trustee on May 13, 1954; (3) in failing to hold that the reservation clause which Builders Trust Company had included in all of its annual accounts since 1947, reserving its right to all administrative expenses and compensation for services from and after inception of the trust, established that it had not waived its right to the distribution fee; (4) in failing to hold that, since under article 9 of the trust the distribution fee was payable to the trustee from the corpus upon final distribution, postponement of its payment until such time would not have affected Builders Trust Company's annual accounts; and (5) in holding that the April 15, 1954, agreement was against public policy notwithstanding that it appears that counsel for the principal beneficiary was aware of it and that the present objectors acquiesced to similar provisions in the Effie Butler O'Connor trust in which they are beneficiaries and even though it did not jeopardize, affect, or modify the rights of any beneficiaries since the distribution fee otherwise would have been payable to Midland and since its allowance by the court must be dependent solely upon services rendered to justify it and which inured to the benefit of such beneficiaries.
1. The rights of the various parties involved in these proceedings are dependent upon the validity of the April 15, 1954, agreement as it related to payment of the distribution fee provided for under article 9 of the trust instrument. No question concerning the meaning, purpose, *559 and validity of such article has been raised. The provisions of the trust received this court's stamp of approval in In re Trusts Created by Butler, 223 Minn. 196, 26 N.W. (2d) 204, 172 A.L.R. 977.
There can be no question as to the validity of the agreement of April 15, 1954, as between Midland and Builders Trust Company. They dealt with each other at arms' length. Midland recognized that if Builders Trust Company continued as trustee it would be entitled to the distribution fee upon termination of the trust. The latter had acted in the administration of the trust for some 34 years, during which time it had received approximately $19,000 less than the 5 percent of gross income to which it would have been entitled under the terms of the trust for its annual compensation. Midland was desirous of obtaining the trust business for its trust department and recognized that Builders Trust Company had accomplished the major part of the work involving the conservation of the trust upon which the distribution fee was in part to be based. In substance, the agreement involved merely an apportionment of the distribution fee payable under the terms of a trust instrument as between a trustee and its successor. Nothing therein would conflict with public policy. 54 Am. Jur., Trusts, § 536; Haas v. Hudson County Nat. Bank, 115 N.J. Eq. 311, 170 A. 611, 94 A.L.R. 1099; Kennedy Trust, 364 Pa. 310, 72 A. (2d) 124, 18 A.L.R. (2d) 1374; see, In re Trusteeships under Will of Drake, 195 Minn. 464, 263 N.W. 439, 101 A.L.R. 801.
2. The fact that Robert Butler had succeeded to the ownership of Builders Trust Company would not extinguish or lessen the latter's right to the distribution fee for services performed in the administration and conservation of the trust. No one has asserted that, after Builders Trust Company became owned and controlled by Robert Butler in 1937, the services furnished by it were not faithfully, honestly, and capably performed, or that it had discriminated as between beneficiaries. There is no suggestion that when Robert Butler acquired from the present objecting beneficiaries their stock in Builders Trust Company he did not pay full value therefor. All of them were aware that Builders Trust Company would be entitled to the annual compensation for administering the trust and also to the distribution fee ultimately to be paid upon its termination. The suggestion that at *560 the time the trust instrument was executed the settlor may not have contemplated that in the future Builders Trust Company might be owned and controlled by one individual could have no bearing on the determination of the issues presented here, where, throughout the entire administration of the trust, no claim of fraud or dishonesty has been established. In re Trusts Created by Butler, 223 Minn. 196, 26 N.W. (2d) 204, 172 A.L.R. 977. See, Davidson Trust, 354 Pa. 333, 47 A. (2d) 145, 165 A.L.R. 768.
3. If the agreement of April 15, 1954, be held void as to the objecting beneficiaries because contrary to public policy, such a determination must find support in evidence that it was motivated by deceit or fraud and that in consequence they suffered damage or discrimination. As evidence of the agreement's conflict with public policy, they relied upon the failure of Builders Trust Company to advise them as to its provisions at the time it was made. But, as indicated above, the attorney for Helen W. Butler, the principal beneficiary and only objector at the time, was aware of the agreement. And, while Builders Trust Company did not notify the present objecting beneficiaries thereof, the latter were aware that a similar agreement had been made in the Effie Butler O'Connor trust when Builders Trust Company resigned as trustee therein in favor of Anglo-California National Bank, which then consented to pay over the distribution fee in that trust to Builders Trust Company even though final distribution of the trust was not involved. This agreement was made without objection on the part of any such beneficiaries and was filed in the office of the clerk of District Court of Ramsey County. While here it would have been better had notice of the arrangement been given to the beneficiaries of the Helen W. Butler trust, in view of the factors above described it is extremely doubtful if any of them would have objected thereto at that time. Further, had serious objections been raised, it is likely that the resignation of Builders Trust Company would have been postponed in view of the fact that but a few years were left for the trust's existence. In any event, the failure to notify these beneficiaries of the agreement cannot be said to have resulted in any damage to any of them or to have defrauded them of any of their rights or interests in the assets of *561 this trust. All parties recognized the fact that payment of a distribution fee would ultimately be due upon termination of the trust. The only question was whether Builders Trust Company or its successor would receive it. Certainly no objection could presently have been interposed by these beneficiaries had Midland claimed the right to the distribution fee in the absence of the agreement of April 15, 1954. Subject to the court's approval, it would have become payable to Midland from the corpus of the trust as provided in article 9. How then can it be said that the beneficiaries have been damaged if instead it becomes payable to Builders Trust Company, particularly where, for over a period of 34 years, the beneficiaries have received the benefit of the services which Builders Trust Company had furnished at a figure substantially less than that provided for under the agreement? It is significant that the only objection ever made to the fee at any time prior to the present proceedings was that Builders Trust Company sought to obtain it prior to the final distribution date when it became due. Under the circumstances thus presented and under the facts outlined, we must hold that the finding that the April 15, 1954, agreement was invalid as contrary to public policy cannot be sustained.[2]
4. There is nothing to support a finding that Builders Trust Company waived or intended to waive its right to the distribution fee. Counsel for the objecting beneficiaries concede that there was no such intent. This trustee's nonwaiver is manifested by the reservation clause included in its annual accounts and by the agreement of April 15, 1954, of which counsel for Helen W. Butler was aware. No one was ever advised that this fee was to be waived at any time. At the time Builders Trust Company resigned as trustee, no obligation to waive such fee was imposed upon it as a condition for acceptance of such resignation. Its policy of nonwaiver was clearly disclosed at the time it resigned *562 as trustee in the Effie Butler O'Connor trust, whereof the present objectors are principal beneficiaries. Since here at the time of resignation it was agreed by counsel that the fee was not then due, and since it is payable from the corpus of the estate, the postponement of its payment until termination of the trust would have no bearing upon the trustee's annual accounts. There is nothing to indicate that in the absence of the April 15, 1954, agreement the beneficiaries were of the belief that no distribution fee was payable to the trustee at the time of distribution, or that such a fee was not a valid obligation of the trust. Likewise, there is nothing in said agreement to indicate that Midland had waived the distribution fee. Such agreement clearly established that a claim for the fee would be presented by Midland, the only limitation therein being that ultimately such fee would be paid over to Builders Trust Company which had furnished the greater part of the services establishing the basis therefor. See, In re Trusteeships under Will of Drake, 195 Minn. 464, 263 N.W. 439, 101 A.L.R. 801.
The case is remanded so that a fair distribution fee may be determined under article 9 with cognizance of Midland's obligation to pay over such fee to Builders Trust Company or its successor under the agreement of April 15, 1954.
MR. JUSTICE OTIS, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.
NOTES
[1] For details with reference thereto, see In re Trusts Created by Butler, 223 Minn. 196, 26 N.W. (2d) 204, 172 A.L.R. 977.
[2] In In re New Jersey Title G. & T. Co. 76 N.J. Eq. 293, 75 A. 232, it was held that the short time during which a trustee had served in a trust, which had some additional 30 to 40 years expectancy, did not entitle him to a commission upon the corpus of the trust, although compensation for services based upon trust income was approved. Here, where claimant served 34 of the 39 years during which the trust existed, it would seem just to apply a converse rule.